*1236 Opinion for the Court filed by Circuit Judge TATEL.
Dissenting opinion filed by Circuit Judge HENDERSON.
TATEL, Circuit Judge:
The federal “[aggravated identity theft” statute imposes two additional years of imprisonment on any person who during the commission of an enumerated felony “knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person.” 18 U.S.C. § 1028A(a)(l). The question before us is this: to obtain a conviction under section 1028A(a)(l), must the government prove the defendant knew the “means of identification” he “transfer[red], possessefd], or use[d]” actually belonged to “another person,” or is it sufficient for the government to show that the means of identification happened, to belong to another person? Based on the statute’s text, purpose, and legislative history — and mindful that the rule of lenity comes into play when, after resort to the traditional tools of statutory interpretation, reasonable doubt remains as to the statute’s meaning — we hold that section 1028A(a)(l)’s mens rea requirement extends to the phrase “of another person,” meaning that the government must prove the defendant actually knew the identification in question belonged to someone else.
I.
Defendant Gustavo Villanueva-Sotelo, a Mexican national, has entered the United States illegally three times and has been deported twice. In August 2006, District of Columbia Metropolitan Police approached Villanueva-Sotelo and asked him for identification. Villanueva-Sotelo presented the officers with what appeared to be a permanent resident card — an official document issued by the Department of Homeland Security proving its holder is authorized to stay or work in the United States. Villanueva-Sotelo’s card displayed his own name and photograph, listed Mexico as his country of origin, and included an alien registration number. Villanueva-So-telo admits he knew the card was a fake. Although the government can prove that the alien registration number displayed on the card belonged to another individual, it concedes — critically for this case — that it lacks any evidence that Villanueva-Sotelo actually knew this.
The government charged Villanueva-So-telo with unlawful entry of a removed alien in violation of 8 U.S.C. § 1326(a) and (b)(1) (count one), possession of a fraudulent document prescribed for authorized stay or employment in the United States in violation of 18 U.S.C. § 1546(a) (count two), and aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(l) (count three). In full, the identity theft statute reads: “Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.” Id. (emphasis added).
Villanueva-Sotelo pled guilty to the first two counts but moved to dismiss count three, the aggravated identity theft charge, arguing that section 1028A(a)(l) requires the government to prove he actually knew the alien registration number belonged to another person. Agreeing with the defendant, Judge Friedman held that the word “knowingly” in section 1028A(a)(l) must “modify both the verbs and the object, that is, ‘means of identification of another person.’ ” Hr’g Tr. at 50 (Apr. 4, 2007). In reaching this conclusion, the Judge found the following exchange *1237 with the prosecutor particularly illuminating:
[PROSECUTOR]: [I]t is stealing in the sense that if I make up a number and it belongs to someone else, I have taken that person’s number that was rightfully assigned by a U.S. agency.
THE COURT: If you make up the number?
[PROSECUTOR]: Yes. If I—
THE COURT: What if you make up a number that doesn’t belong to anybody?
[PROSECUTOR]: Then you don’t charge the offense, there is no offense because it’s not a means of identification of another person.
THE COURT: So if the defendant picked a number out of the air and it was [your] number, he’s guilty, but if he picked a number out of the air and [Immigration and Customs Enforcement] hasn’t assigned it to anybody, he’s not guilty?
[PROSECUTOR]: That’s correct.
Id. at 15. Unable to conclude that a scenario like this amounts to identity theft, see id. at 48, Judge Friedman granted Villanueva-Sotelo’s motion to dismiss count three.
The government now appeals. Because this case presents a pure question of statutory interpretation, we review the district court’s decision de novo. See Butler v. West, 164 F.3d 634, 639 (D.C.Cir.1999).
II.
Our interpretive task begins with the statute’s language. See Barnhart v. Sigmon Coal Co., 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002). We must first “determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.” Robinson v. Shell Oil Co., 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). If it does, our inquiry ends and we apply the statute’s plain language. See Sigmon Coal, 534 U.S. at 450, 122 S.Ct. 941. But if we find the statutory language ambiguous, we look beyond the text for other indicia of congressional intent. See Staples v. United States, 511 U.S. 600, 605, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) (“[D]etermining the mental state required for commission of a federal crime requires ‘construction of the statute and ... inference of the intent of Congress.’ ” (omission in original) (quoting United States v. Balint, 258 U.S. 250, 253, 42 S.Ct. 301, 66 L.Ed. 604 (1922))).
Reduced to its essence, section 1028A(a)(l) reads as follows: “Whoever ... knowingly ... uses, without lawful authority, a means of identification of another person shall ... be sentenced to a term of imprisonment of 2 years.” According to the government, this text is unambiguous: the statute’s knowledge requirement extends only so far as “means of identification,” requiring no proof the defendant knew the identification belonged to “another person.” For his part, Villanueva-Sotelo contends the statute is ambiguous and that the provision’s title, purpose, and legislative history reveal Congress’s intent to extend the mens rea requirement throughout the entire sentence, namely all the way to “of another person.” We agree with the defendant. Although the government’s interpretation is plausible, nothing suggests it represents the only possible — or even the most plausible — reading of section 1028A(a)(l). See McCreary v. Offner, 172 F.3d 76, 82 (D.C.Cir.1999) (finding a statute ambiguous because it was “reasonably susceptible to more than one meaning”); see also Air Transp. Ass’n of Am. v. FAA, 169 F.3d 1, 4 (D.C.Cir.1999) (“Although the inference petitioner would draw as to the statute’s *1238 meaning is not by any means unreasonable, it is also not inevitable.”).
The parties focus on the word “knowingly,” debating whether that adverb modifies the phrase “of another person.” But a simple diagram of the relevant statutory text readily demonstrates that, from a grammatical point of view, this is not the correct question:
[[Image here]]
The word “knowingly” technically modifies only the verb that follows it (“uses”). It modifies neither the direct object (“means”) nor the two prepositional phrases that follow (“of identification of another person”). See Robert Funk et al., The Elements of Grammar for Writers 62 (MacMillan 1991) (“An adverb, in standard English, modifies almost anything except a noun.”).
In the end, this grammatical observation is beside the point given that the parties, as well as relevant case law interpreting similarly structured statutes (cases we discuss below), are best understood as using the word “modify” more loosely, equating it with words such as “apply,” “extend,” or “attach.” See, e.g., United States v. X-Citement Video, Inc., 513 U.S. 64, 73, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994); Liparota v. United States, 471 U.S. 419, 424-25 n. 7, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985); United States v. Nofziger, 878 F.2d 442, 446 (D.C.Cir.1989). Thus, - framing the question in terms of statutory interpretation, we ask how far section 1028A(a)(l)’s mens rea requirement — “knowingly”— reaches in the statute.
That question requires us to focus on the statute’s direct object, “means.” “Means” is modified by the prepositional phrase “of identification,” which, in turn, is modified by a second prepositional phrase, “of another person.” As the government concedes, the mens rea requirement must extend at least to the direct object’s principal modifier, “of identification.” Were it otherwise, a person could be convicted for “knowingly us[ing] or transfer[ring],” without lawful authority, anything at all that happened to contain a means of identification. As one district court explained:
If during a bank fraud conspiracy, I hand a defendant a sealed envelope asking her to transfer it and its contents to another and she knowingly does so, she has knowingly transferred the envelope and its contents. But if she believes my statement that the envelope contains only a birthday card when in fact it contains a forged social security card, the government surely would not contend that she should receive the enhanced penalty.
United States v. Godin, 476 F.Supp.2d 1, 2 (D.Me.2007). And it goes without saying that the mens rea requirement must also reach beyond the bare direct object “means” to its first modifying phrase “of identification,” lest the sentence become gibberish: “knowingly using a means” means nothing.
*1239 But what of the second and crucial prepositional phrase “of another person”? Does section 1028A(a)(l)’s mens rea requirement apply to it as well? The government is certainly correct that the statute’s knowledge requirement might apply only to the direct object’s first prepositional phrase, thereby criminalizing “knowingly transfer[ing], possessing], or us[ing] ... a means of identification” that happens to belong to another. Indeed, as the dissent points out, Congress knows how to draft a statute that unambiguously extends a mens rea requirement to various elements in the statutory text. See Dissenting Op. at 1256 (citing 18 U.S.C. § 1546(a)). But with regard to section 1028A(a)(l), the defendant’s view — that the statute’s mens rea requirement extends all the way to “of another person” — is at least equally plausible. Neither the government nor the dissent offers a convincing reason, nor are we aware of one, demanding that the statute’s mens rea requirement halt after “of identification” rather than proceed to “of another person.” Indeed, the Model Penal Code adopts as a general principle of construction a rule under which, absent evidence to the contrary, the mens rea requirement encompasses all material elements of an offense. See Model Penal Code § 2.02(4) (1985) (“When the law defining an offense prescribes the kind of culpability that is sufficient for the commission of an offense, without distinguishing among the material elements thereof, such provision shall apply to all the material elements of the offense, unless a contrary purpose plainly appears.”); see also X-Citement Video, 513 U.S. at 79, 115 S.Ct. 464 (Stevens, J., concurring) (“[T]he normal, commonsense reading of a subsection of a criminal statute introduced by the word ‘knowingly’ is to treat that adverb as modifying each of the elements of the offense identified in the remainder of the subsection.”).
A simple rewrite of the statute further underscores the plausibility of Villanueva-Sotelo’s interpretation. Suppose section 1028A(a)(l) had read, “whoever knowingly uses ... another person’s means of identification.” Written that way, the statute would most plausibly require proof that the defendant actually knew the means of identification used belonged to someone else, and as government counsel agreed at oral argument, the phrases “means of identification of another person” and “another person’s means of identification” carry precisely the same meaning. Oral Arg. at 5:13 — :33, 7:49-8:02. True, Congress used a cumbersome prepositional phrase rather than the more elegant possessive form, but we see nothing of significance in that syntactic choice.
Two additional factors reinforce our conclusion that section 1028A(a)(l) is ambiguous. First, the next provision of the same statute, section 1028A(a)(2), increases penalties for identity theft perpetrated in connection with “[t]errorism offense[s].” 18 U.S.C. § 1028A(a)(2). Structured nearly identically to subsection (a)(1), that provision reads:
Whoever, during and in relation to any felony violation enumerated in section 2332b(g)(5)(B), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person or a false identification document shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 5 years.
Id. (emphasis added). The government concedes that section 1028A(a)(2)’s knowledge requirement must apply to the whole phrase “false identification document.” Oral Arg. at 8:43-:58, 9:30-:48. Thus, as a matter of pure textual distance, the mens rea requirement travels farther in subsection (a)(2) than the government claims possible in subsection (a)(1). Indeed, under *1240 the government’s interpretation, “knowingly” must skip over the contested phrase “of another person” and then, suddenly resuming its influence, apply to “false identification document.” Moreover, if Congress had intended section 1028A(a)(2)’s mens rea requirement to reach beyond “identification document” to embrace the fact of its falsity, it seems equally likely that Congress intended a parallel application regarding the phrase “means of identification of another person” — precisely the same language at issue in section 1028A(a)(l). As the Supreme Court has observed, “it is difficult to conclude that the word ‘knowingly’ modifies one of the elements in [a] subsection[ ] ... but not the other.” X-Citement Video, 513 U.S. at 77-78, 115 S.Ct. 464. And if “knowingly transfers, possesses, or uses” acts upon the direct object and its modifiers in subsection (a)(2), we think it quite reasonable to conclude that it could do the same in subsection (a)(1).
Second, we have previously found similarly structured statutes to be ambiguous. For instance, in United States v. Nofziger, 878 F.2d 442, we considered a statute prohibiting former government employees from lobbying their former agencies. In relevant part, that statute prohibited covered employees from “knowingly ... with the intent to influence, mak[ing] any oral or written communication ... to the department or agency in which he served ... in connection with any ... particular matter ... in which such department or agency has a direct and substantial interest.” 18 U.S.C. § 207(c) (1982) (emphasis added). There, as here, “[t]he principal dispute in th[e] case [was] over the reach of the word ‘knowingly.’ ” Nofziger, 878 F.2d at 444. While Nofziger, a former White House advisor convicted under this statute for improperly communicating with his former employer, argued that the government had to “show[ ] that he had knowledge that the agency had a ‘direct or substantial’ interest in the matter,” the government urged a more limited application of the statute’s mens rea requirement. Id. at 446. Ultimately agreeing with Nofziger and observing that the statute was “hardly a model of clarity,” id. at 445 (citation omitted), we found the provision ambiguous, stating that “ ‘knowingly’ can reasonably be read to apply to all elements of the ... offense, including the ‘direct or substantial interest’ element.” Id. at 447; see also id. (“[T]he ... language ... clearly permits the inference that ‘knowingly’ attaches to all elements of the ... offense.”). So too here. Text alone cannot resolve this case because “knowingly” may “apply to all elements of the ... offense,” id., including the requirement that the identification used belong to “another person.”
Likewise, in United States v. Chin, 981 F.2d 1275 (D.C.Cir.1992), we confronted a statute making it a crime for any adult “knowingly and intentionally” to “employ, hire, use, persuade, induce, entice, or coerce, a person under eighteen years of age to assist in avoiding detection or apprehension for any [listed federal drug offense].” 21 U.S.C. § 861(a)(2). Again observing that the statute was “not a model of meticulous drafting,” we explained that “[o]ne cannot tell from the words alone whether the person’s juvenile status must be known ... or whether it suffices that the act of using a person to avoid detection be ‘knowing[ ] and intentional ].’ ” Chin, 981 F.2d at 1279 (emphasis added) (second and third alterations in original). Here, faced with similarly ambiguous text, we “cannot tell from the words alone,” id., whether section 1028A(a)(l) requires the defendant to know that the means of identification he used belonged to another person, or whether it suffices that the act of “trans *1241 fer[ring], possessing], or us[ing] ... a means of identification” be done “knowingly.” 18 U.S.C. § 1028A(a)(l). To be sure, in Chin we ultimately held that the statute required no proof the defendant knew the person used was a minor, but we did so only after investigating the statute’s purpose and finding Congress’s intent to protect minors as a class “fairly implied.” 981 F.2d at 1280. Although the government now urges us to follow Chin by refusing to extend “knowingly” throughout section 1028A(a)(l), it ignores Chin’s holding that text alone failed to resolve the case.
The Supreme Court has also provided useful guidance on how to interpret statutes constructed like section 1028A(a)(l). In Liparota v. United States, 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434, the Court wrestled with a federal food stamp statute that read: “[W]hoever knowingly uses, transfers, acquires, alters, or possesses coupons or authorization cards in any manner not authorized by [law]” is subject to a fine and imprisonment. 7 U.S.C. § 2024(b)(1) (1982). The parties disputed whether the statute’s knowledge requirement applied to the phrase “in any manner not authorized by [law].” Text alone, the Court explained, provided no answer:
Congress has not explicitly spelled out the mental state required. Although Congress certainly intended by use of the word “knowingly” to require some mental state with respect to some element of the crime defined in [the statute], the interpretations proffered by both parties accord with congressional intent to this extent. Beyond this, the words themselves provide little guidance. Either interpretation would accord with ordinary usage.
Liparota, 471 U.S. at 424, 105 S.Ct. 2084 (third emphasis added). By way of analogy, the Court made the same point in a footnote:
Still further difficulty arises from the ambiguity which frequently exists concerning what the words or phrases in question modify. What, for instance, does “knowingly” modify in a sentence from a “blue sky” law criminal statute punishing one who “knowingly sells a security without a permit” from the securities commissioner? To be guilty must the seller of a security without a permit know only that what he is doing constitutes a sale, or must he also know that the thing he sells is a security, or must he also know that he has no permit to sell the security he sells? As a matter of grammar the statute is ambiguous; it is not at all clear how far down the sentence the word “knowingly” is intended to travel — whether it modifies “sells,” or “sells a security,” or “sells a security without a permit. ”
Id. at 424-25 n. 7, 105 S.Ct. 2084 (emphasis added) (quoting W. LaFave & A. Scott, Criminal Law § 27 (1972)); see also Arthur Andersen LLP v. United States, 544 U.S. 696, 705, 125 S.Ct. 2129, 161 L.Ed.2d 1008 (2005) (“We have recognized with regard to similar statutory language that the mens rea at least applies to the acts that immediately follow, if not to other elements down the statutory chain.” (emphasis added)).
As in the statutes at issue in Liparota, Chin, and Nofziger, the word “knowingly” appears in section 1028A(a)(l) before a verb or series of verbs, a direct object, and at least one other term further describing that object. Here, as in those cases, the government and defendant contest the knowledge requirement’s reach. And here, as in those cases, “either interpretation would accord with ordinary usage.” Liparota, 471 U.S. at 424, 105 S.Ct. 2084.
Ignoring the Supreme Court’s clear finding that text alone cannot resolve statutes structured this way, the government *1242 and dissent argue that Liparota, reinforced by X-Citement Video, demonstrates that the Court will extend a knowledge requirement only when failing to do so could criminalize otherwise innocent conduct — a concern not present here because section 1028A(a)(l) requires a predicate felony offense. See Dissenting Op. at 1257-60. True, the Court has found it “particularly appropriate” to extend a mens rea requirement when failure to do so would result in a statute criminalizing nonculpable conduct. Arthur Andersen, 544 U.S. at 703, 125 S.Ct. 2129; Liparota, 471 U.S. at 426, 105 S.Ct. 2084; see also Staples, 511 U.S. at 610, 114 S.Ct. 1793 (“[We have taken] particular care ... to avoid construing a statute to dispense with mens rea where doing so would ‘criminalize a broad range of apparently innocent conduct.’ ” (quoting Liparota, 471 U.S. at 426, 105 S.Ct. 2084)). But the Court has never held that avoiding such a result is the only reason to do so. Thus, while “[t]he presumption in favor of scienter requires a court to read into a statute only that mens rea which is necessary to separate wrongful conduct from ‘otherwise innocent conduct,’ ” Carter v. United States, 530 U.S. 255, 269, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000) (emphasis added) (quoting X-Citement Video, 513 U.S. at 72, 115 S.Ct. 464), courts may extend a mens rea requirement when ordinary tools of statutory interpretation — text, structure, purpose, and legislative history — compel that result. Accordingly, Liparota’s concern with criminalizing nonculpable conduct has no bearing on the threshold issue before us — whether section 1028A(a)(l) is ambiguous.
In answering that question in the affirmative, we acknowledge, as the government emphasizes, that the Fourth Circuit reached the opposite conclusion in United States v. Montejo, 442 F.3d 213 (4th Cir.2006), cert. denied, — U.S. —, 127 S.Ct. 366, 166 L.Ed.2d 138 (2007). Finding section 1028A(a)(l) unambiguous, our neighboring circuit reasoned that “as a matter of common usage, ‘knowingly’ does not modify the entire lengthy predicate that follows it.” Id. at 215. Although the Eleventh Circuit, along with several district courts, has adopted this interpretation, see, e.g., United States v. Hurtado, 508 F.3d 603 (11th Cir.2007) (per curiam); United States v. Godin, 489 F.Supp.2d 118 (D.Me.2007); United States v. Contreras-Macedas, 437 F.Supp.2d 69 (D.D.C.2006), other district courts have found section 1028A(a)(l) ambiguous and embraced the defendant’s view. See United States v. SalazarMontero, 520 F.Supp.2d 1079 (N.D.Iowa 2007); United States v. Beachem, 399 F.Supp.2d 1156 (W.D.Wash.2005).
We respectfully disagree with Montejo. Although the court there correctly concluded that the adverb “knowingly” modifies only the verbs “transfers, possesses, [and] uses,” see 442 F.3d at 215 (alteration in original), that grammatical observation, as explained above, fails to resolve the key question, namely, how far does the statute’s mens rea requirement extend? Mon-tejo’s observation that “knowingly” must rest “adjacent to the words it modifies, as close as it can get” provides no help either. Id. at 216. As one district court interpreting section 1028A(a)(l) observed, “‘knowingly’ has been placed as close as possible to the entire, indivisible predicate: ‘transfers, possesses, or uses, without lawful authority, a means of identification of another person.’” Salazar-Montero, at 1090. Moreover, Liparota’s observation that statutes structured like 1028A(a)(l) are ambiguous “[a]s a matter of grammar,” 471 U.S. at 425 n. 7, 105 S.Ct. 2084, fatally undermines Montejo’s reliance on “common usage.” 442 F.3d at 215. Indeed, the Fourth Circuit expressly acknowledged *1243 that in Liparota the Court found both “interpretation^] of the scope of the term ‘knowingly’ ... in accord with common usage.” Id. at 216.
III.
Having found section 1028A(a)(l) ambiguous, “we seek guidance in the statutory structure, relevant legislative history, [and] congressional purposes expressed in the [statute].” Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 737, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985). According to the government, the legislative history demonstrates that “Congress intended to criminalize the knowing possession of fraudulent identity documents, even if the defendants lacked the specific knowledge that they possessed a real person’s means of identification.” Appellant’s Opening Br. 18. The dissent agrees. See Dissenting Op. at 1254. Reading the legislative history differently, Villanueva-Sotelo argues that Congress intended to target identity theft and the thieves who perpetrate it, rather than to create a sentencing enhancement for individuals who use fraudulent identifying information belonging purely by happenstance to someone else. Again, we agree with Villanueva-Sotelo.
We begin with section 1028A’s title: “[aggravated identity theft.” See Almendarez-Torres v. United States, 523 U.S. 224, 234, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) (“[T]he title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute.” (citation and internal quotation marks omitted)); see also Pa. Dep’t of Corrections v. Yeskey, 524 U.S. 206, 212, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998) (“For interpretive purposes, [the title is] of use only when [it] shed[s] light on some ambiguous word or phrase.” (second and third alterations in original) (citation and internal quotation marks omitted)). As that title demonstrates, the statute concerns “theft,” i.e., “the felonious taking and removing of personal property with intent to deprive the rightful owner of it. ” Webster’s Third New International Dictionary 2369 (1993) (emphasis added); see also Black’s Law Dictionary 1516 (8th ed. 2004) (“The felonious taking and removing of another’s personal property with the intent of depriving the true owner of it.”). Yet Villanueva-Sotelo, having had no idea that his forged alien registration number belonged to anyone at all, couldn’t possibly have had the intent to deprive another person of his or her identity. True, Villa-nueva-Sotelo had a guilty mind — he knowingly presented a fake permanent resident card to D.C. police officers — but he pled guilty to precisely that charge in the indictment’s second count and is being punished accordingly.
Judge Friedman’s colloquy with the prosecutor, see supra at 1236-37, reveals just how far the government’s interpretation departs from the statute’s focus on “theft.” As the government argued in the district court and reiterated at oral argument here, a defendant could pick a series of numbers out of the air and win two extra years in prison if those numbers happened to coincide with an assigned identification number, yet escape punish^ ment under section 1028A(a)(l) had he picked a slightly different string of random numbers. See Hr’g Tr. at 15, 48. That’s not theft. Judge Friedman could not square the government’s position with congressional intent, nor can we.
That Congress intended section 1028A(a)(l) to single out thieves — in the traditional sense of the word — for enhanced punishment finds additional support in the statute’s legislative history. Frustrated that “many identity thieves receive short terms of imprisonment or pro *1244 bation,” H.R.Rep. No. 108-528, at 3 (2004), reprinted in 2004 U.S.C.C.A.N. 779, 780, Congress passed section 1028A(a)(l) as part of the Identity Theft Penalty Enhancement Act, Pub.L. No. 108-275, 118 Stat. 831 (2004). The House Judiciary Committee Report accompanying the Act repeatedly emphasizes Congress’s intent to target and punish “identity thieves” who “steal identities to commit terrorist acts, immigration violations, firearms offenses, and other serious crimes.” H.R.Rep. No. 108-528, at 3, 2004 U.S.C.C.A.N. at 780 (emphases added). The report further explains: “The terms ‘identity theft’ and ‘identity fraud’ refer to all types of crimes in which someone wrongfully obtains and uses another person’s personal data in some way that involves fraud or deception, typically for economic or other gain, including immigration benefits.” Id. at 4, 2004 U.S.C.C.A.N. at 780. Although whether a person who imagines a string of random numbers has “wrongfully obtainfed]” personal data is debatable, section 1028A(a)(l)’s legislative history demonstrates that at least for purposes of this statute, Congress has already answered that question in the negative. The House Report describes identity theft in detail, providing a series of examples of how one “wrongfully obtains” another person’s personal data. The report first describes how “identity thieves” operate, explaining that they
obtain!] individuals’ personal information for misuse not only through “dumpster diving,” but also through accessing information that was originally collected for an authorized purpose. The information is accessed either by employees of the company or of a third party that is authorized to access the accounts in the normal course of business, or by outside individuals who hack into computers or steal paperwork likely to contain personal information.
Id. at 4-5, 2004 U.S.C.C.A.N. at 781. The report then lists a string of cases in which convicted identity thieves escaped with relatively light sentences, all of which involved defendants who, unlike Villanueva-Sotelo, knew the identification they used belonged to another. Focusing on the immigration context, the report mentions a case in which a Mexican resident obtained federal benefits by using “the name and Social Security number of his former brother-in-law, a U.S. citizen.” Id. at 6, 2004 U.S.C.C.A.N. at 781. Other examples cited include a woman who used her husband’s social security number to obtain disability benefits, a health club worker who used a “skimmer” to obtain credit card data from the club’s members, and a bank employee who accessed the bank’s computer files to obtain customer account information. Id. at 5-6, 2004 U.S.C.C.A.N. at 781. In each of these examples, the thief knew the stolen information belonged to another person — indeed, that was the very essence of the crime.
The floor debate reveals a similar emphasis on theft. Representative Sensen-brenner, the House Judiciary Committee Chair and the bill’s floor manager, explained, “This legislation will allow prosecutors to identify identity thieves who steal an identity, sometimes hundreds or even thousands of identities, for purposes of committing one or more crimes.” 150 Cong. Rec. H4809 (daily ed. June 23, 2004) (statement of Rep. Sensenbrenner). Representative Carter, the Act’s author and lead sponsor, likewise explained that the legislation would “facilitate the prosecution of criminals who steal identities in order to commit felonies,” recounting a case in which a “Texas driver’s license bureau clerk pleaded guilty to selling ID cards to illegal immigrants using stolen information from immigration papers.” Id. at H4810 (statement of Rep. Carter). *1245 At no point in the legislative record did anyone so much as allude to a situation in which a defendant “wrongfully obtain[ed]” another person’s personal information unknowingly, unwittingly, and without intent.
In support of the contrary position— that Congress targeted not just thieves, but also anyone using a false identification document happening to belong to another person — the government directs us to the following language from the House Report:
This section amends Title 18 to provide for a mandatory consecutive penalty enhancement of 2 years for any individual who knowingly transfers, possesses, or uses the means of identification of another person in order to commit a serious Federal predicate offense ( ... including immigration violations, false citizenship crimes, firearms offenses, and other serious crimes).
H.R.Rep. No. 108-528, at 10, 2004 U.S.C.C.A.N. at 780. But as the Supreme Court stated when confronting similarly unilluminating legislative history, “[w]e fail to see how this sentence, which merely parrots the terms of the statute, offers any enlightenment as to what those terms mean.” Liparota, 471 U.S. at 430-31 n. 13, 105 S.Ct. 2084.
As for the long list of examples evincing the statute’s focus on intentional theft, the government and our dissenting colleague argue that Congress wished to highlight only the most egregious examples of identity theft without limiting the statute’s reach to those examples. See Dissenting Op. at 1253. This point would carry more weight were the list the only evidence of congressional intent. But it isn’t. Viewing the list in combination with the statute’s title and the legislative record as a whole, we think it clear that Congress never intended its “aggravated identity theft” statute to reach conduct like Villanueva-Sotelo’s.
Next, pointing to some of the same legislative history recounted above, the government and dissent contend that Congress desired to make it easier for prosecutors “to convict identity thieves” and to enhance their punishments accordingly. H.R.Rep. No. 108-528, at 10, 2004 U.S.C.C.A.N. at 780; Dissenting Op. at 1255. We agree, but that begs the question before us: did Congress consider a defendant like Villanueva-Sotelo to be an identity thief subject to prosecution under this statute? All of the legislative history the government cites presupposes the answer to that question.
Finally, the government urges us to disregard the “brief’ legislative discussion surrounding section 1028A(a)(l), Appellant’s Opening Br. 18, and to look instead to section 1028(a)(7), a nearby provision amended at the same time Congress passed section 1028A(a)(l). See 18 U.S.C. § 1028(a)(7) (“Whoever ... knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law ... shall be punished as provided.... ”). Because we find plenty in section 1028A’s legislative history revealing congressional intent regarding that provision, we see little reason to look to other statutes for guidance. In any event, the legislative discussion surrounding section 1028(a)(7) offers the government no help. Congress amended section 1028(a)(7) to ease the prosecution of identity thieves who intend to use “another person’s means of identification” (note the use of the possessive form, see supra at 1239-40) to commit a felony, but have not yet actually done so. See H.R.Rep. No. 108-528, at 10-11, 2004 U.S.C.C.A.N. at 786. *1246 This tells us nothing about whether conduct like Villanueva-Sotelo’s amounts to “identity theft” in the first place. Moreover, according to the House Report, the amendment targeted those “who knowingly facilitate the operations of an identity-theft ring by stealing, hacking, or otherwise gathering in an unauthorized way other people’s means of identification, but who may deny that they had the specific intent to engage in a particular fraud scheme.” Id. at 11, 2004 U.S.C.C.A.N. at 786. Far removed from the issue we face here, that scenario underscores the extent to which Congress intended to single out and punish those who knowingly steal others’ identities.
In short, there is a salient difference between theft and accidental misappropriation. While Villanueva-Sotelo surely misappropriated someone else’s alien registration number, no evidence shows he stole it in any meaningful sense. As the first district court to interpret this statute observed, and as the government concedes, “it is odd — and borders on the absurd — to call what [the defendant] did ‘theft.’” United States v. Montejo, 353 F.Supp.2d 643, 654 (E.D.Va.2005), aff'd, 442 F.3d 213; see also No Need to Show ID Theft for an ID Theft Conviction, 30 Nat’l L.J., Dec. 3, 2007, at 14 (describing the Eleventh Circuit’s decision in United States v. Hurtado, 508 F.3d 603). But “theft” is precisely what Congress targeted when it passed section 1028A(a)(l). Because Congress intended to express “the moral condemnation of the community,” United States v. Bass, 404 U.S. 336, 348, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), by enhancing penalties for thieves who steal identities, we hold that section 1028A(a)(l)’s mens rea requirement extends to the “[aggravated identity theft” statute’s defining element— that the means of identification used belongs to another person.
Even if we harbored any doubt about this — that is, were we unable to find “an unambiguous intent on the part of Congress” — we would “turn to the rule of lenity to resolve the dispute.” United States v. West, 393 F.3d 1302, 1311 (D.C.Cir.2005); see also Moskal v. United States, 498 U.S. 103, 108, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990) (“[W]e have always reserved lenity for those situations in which a reasonable doubt persists about a statute’s intended scope even after resort to ‘the language and structure, legislative history, and motivating policies’ of the statute.” (quoting Bifulco v. United States, 447 U.S. 381, 387, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980))). Although “[t]he rule of lenity is not invoked by a grammatical possibility” and “does not apply if the ambiguous reading relied on is an implausible reading of the congressional purpose,” Caron v. United States, 524 U.S. 308, 316, 118 S.Ct. 2007, 141 L.Ed.2d 303 (1998), the defendant’s reading is quite plausible. Thus, even if the legislative history failed to resolve the statute’s ambiguity, the rule of lenity would forbid us from “interpreting] a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended.” Ladner v. United States, 358 U.S. 169, 178, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958).
IV.
We have several additional reactions to the dissent. To begin with, its view of the statute is not entirely clear. The dissent first seems to agree that section 1028A(a)(l) is ambiguous, relying on legislative history to discern the statute’s meaning. See Dissenting Op. at 1251-55. Elsewhere, however, the dissent concludes that the statute’s text is clear, making resort to legislative history and congres *1247 sional intent unnecessary. See id. at 1240-41.
The dissent accuses us of grafting a common-law definition of theft onto the statute when what is required is “construction of the statute and ... inference of the intent of Congress.” Id. at 1237 (quoting Staples, 511 U.S. at 605, 114 S.Ct. 1793). But as our discussion indicates, see supra at 1242-46, we have done just what the dissent urges: construed the statute and inferred Congress’s intent using the everyday definition of “theft” — as found in section 1028A’s title and throughout its legislative history — as but one tool among others.
The dissent next points to the same House Report language we do, see supra at 1243-44, namely that “[t]he terms ‘identity theft’ and ‘identity fraud’ refer to all types of crimes in which someone wrongfully obtains and uses another person’s personal data in some way that involves fraud or deception.” H.R.Rep. No. 108-528, at 4, 2004 U.S.C.C.A.N. at 780. According to the dissent, this sentence, particularly its reference to “identity fraud,” means that “identity ‘theft’ ” must “be read generically.” Dissenting Op. at 1253. Given the legislative record’s overwhelming number of references to “theft,” “thieves,” and “stealing,” plus the statute’s title and the Judiciary Committee’s many citations to examples of knowing theft, the report’s passing references to “identity fraud” hardly support a conclusion that Congress clearly intended to impose two additional years of punishment on a defendant who happens to pick a number that turns out to belong to someone else rather than one assigned to no one. In any case, unlike the dissent, we are prepared to acknowledge that although the vast weight of the legislative history supports our interpretation, some bits of it arguably cut the other way — namely, the evidence the dissent cites in support of its claim that “a primary purpose of the statute was to” ensure “that the punishment more closely fits the harm the crime causes its victim.” See Dissenting Op. at 1254 & n. 1254. This concession, however, merely reinforces the need for the rule of lenity to resolve any remaining ambiguities, for “where text, structure, and history fail to establish that the Government’s position is unambiguously correct[,] we apply the rule of lenity and resolve the ambiguity in [the defendant’s favor.” United States v. Granderson, 511 U.S. 39, 54, 114 S.Ct. 1259, 127 L.Ed.2d 611 (1994).
The dissent cites a series of cases in which defendants engaged in otherwise culpable conduct were required to “ascertain at [their] peril whether [their actions] c[a]me[ ] within the inhibition of the statute.” Dissenting Op. at 1261 (quoting United States v. Freed, 401 U.S. 601, 609, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971)). Unlike in those cases, however, here we have evidence that Congress intended to limit section 1028A(a)(l) to theft, and we are bound to interpret the statute in light of that expressed intent.
Next, the dissent points to 18 U.S.C. § 1546(a), which provides that “[w]hoever knowingly ... uses ... [an] alien registration receipt card ... knowing it to be forged ... [s]hall be fined under this title or imprisoned.” Id. (emphasis added). Reading this statute in pari materia with section 1028A(a)(l), which contains no similar repetition of the knowledge requirement, the dissent concludes that Congress could not have intended section 1028A(a)(l) to require a showing that the defendant knew the means of identification used belonged to another person. See Dissenting Op. at 1256 & n. 12. Even assuming the in pari materia doctrine applies here, sections 1546(a) and 1028A(a)(l) are easily harmonized when read in tandem: *1248 defendants who use a false alien registration number are punished under the former statute (as was Villanueva-Sotelo), while those who know that number belongs to someone else receive two additional years under the latter.
In any event, we doubt whether in pari materia applies to these statutes. As the very treatise cited by our dissenting colleague explains, courts often ask four questions when deciding if statutes are similar enough to justify reading them in pari materia. The answers to all four questions counsel against applying the canon here. First, were “the two statutes ... contained in the same legislative act”? 2B Norman J. Singer, Sutherland Statutory Construction § 51:3 (6th ed. 2000 & Supp. 2007-2008). Here, they weren’t. Second, do the two statutes require “the same elements of proof’? Id. Here, as the dissent emphasizes, they don’t. See Dissenting Op. at 1257. Third, are the penalties the same for both statutes? 2B Singer, supra, § 51:3. Here, they’re not. And finally, were the two statutes “obviously designed to serve the same purpose and objective”? Id. Answering this last question requires a bit more explanation. As the dissent points out, section 1028A(c)(7), which lists the many predicate offenses triggering the aggravated identity theft statute, incorporates by reference section 1546(a), and both statutes involve “possession of a false means of identification.” Dissenting Op. at 1257 n. 12. True enough, but section 1028A references as predicate offenses a myriad of other federal statutes whose subject matter includes such disparate topics as immigration, social security, embezzlement of public funds, visas, and firearms. See 18 U.S.C. § 1028A(c) (listing predicate felony offenses). We think it stretches the in pari materia canon beyond reason to apply it to such a wide swath of the United States Code. As for the dissent’s observation that sections 1546(a) and 1028A share the same subject matter, “[cjharacterization of the object or purpose is more important than characterization of subject matter in determining whether different statutes are closely enough related to justify interpreting one in light of the other.” 2B Singer, supra, § 51:3. Here, the dissent claims that in passing the Identity Theft Penalty Enhancement Act, Congress’s “central concern [was] the damage caused by the wrongful use of another person’s identity.” Dissenting Op. at 1254 n. 9. That purpose, it goes without saying, differs from the one that animated section 1546(a) — a statute Congress first passed in its current form in 1948, long before “identity theft” entered the criminal lexicon or captured Congress’s attention a half-century later. See United States v. Campos-Serrano, 430 F.2d 173, 175 (7th Cir.1970) (recounting the legislative history of 18 U.S.C. § 1546); see also Identity Theft and Assumption Deterrence Act of 1998, Pub.L. No. 105-318, 112 Stat. 3007 (1998) (amending 18 U.S.C. § 1028 to include a section on identity theft).
Of greater relevance to this case is a related canon of statutory construction: the “general principle ... that when ‘Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.’ ” S0igmon Coal, 534 U.S. at 452, 122 S.Ct. 941 (emphasis added) (quoting Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983)). As we noted above, see supra at 1239-40, subsection 1028A(a)(2) — the terrorism offense provision — makes it a crime knowingly to use “a means of identification of another person or a false identification document,” id. (emphasis added), while subsection (a)(1) — the general offense pro *1249 vision- — -never mentions “false identification documents].” Had Congress parroted subsection (a)(2)’s “false identification document” language in subsection (a)(1), Villa-nueva-Sotelo’s guilt would be plain. But Congress omitted that language for the two-year “general” offense enhancement while including it for the five-year “terrorism offense” enhancement — a decision that makes eminent sense given Congress’s heightened concern with the terrorist threat facing our country. See H.R.Rep. No. 108-528, at 4, 2004 U.S.C.C.A.N. at 786 (explaining that “terrorist organizations increasingly turn to stolen identities to hide themselves from law enforcement”). We see no reason to read subsection (a)(2)’s language into subsection (a)(1) when Congress clearly could have placed it there itself.
After concluding that “dueling canons of statutory construction” might fail to resolve the statute’s inherent ambiguity, the dissent appeals to “common sense” as an interpretive aide. Dissenting Op. at 1257. First off, there is no duel: as we just explained, the canon the dissent cites is either inapplicable or supports our interpretation. More to the point, although common sense certainly plays a role in statutory construction, common sense does not excuse us from engaging in the thorny task of determining what Congress intended when it passed a statute. And here, in any event, to return once more to Judge Friedman’s hypothetical, common sense tells us that a defendant ought not receive two additional years of incarceration for picking one random number rather than another — unless, of course, Congress has made clear that he should. Put another way, it’s only common sense to conclude that conviction under an identity theft statute requires actual theft.
Finally, reproducing a troubling news report from 2006 — which was not before Congress when it passed the Identity Theft Penalty Enhancement Act two years earlier — showing how one victim’s social security number was used by eighty-one different people across the country, see Dissenting Op. at 1255-56 n. 11, the dissent wonders if Congress really could have intended to punish those individuals who knew they had stolen a real person’s number more severely than those who did not. The short answer to that question is yes. We see nothing unfathomable about Congress singling out certain morally culpable conduct for enhanced punishment, and section 1028A(a)(l)’s text, title, and legislative history reveal that Congress did precisely that. And again, even if the dissent’s reading is plausible, it is hardly inescapable — which leads us back to the rule of lenity. When and if Congress considers eases like the one described in the 2006 news article, it may well decide to extend the “[aggravated identity theft” statute’s reach, or to enhance the penalty still further. But that’s a decision for Congress, not this court.
V.
Two final points. First, we doubt that our interpretation of section 1028A(a)(l) will saddle the government with a burden it cannot meet. In each of the examples Congress cited, see supra at 1244-45 — as in most run-of-the-mill identity theft cases — proving the defendant knew the stolen identification belonged to another person should present no major obstacle, as such knowledge will often be demonstrated by the circumstances of the case. For instance, when an individual obtains personal information by trolling through the victim’s garbage or by improperly viewing files to which the perpetrator gains access, he obviously knows the information belongs to someone else. And when an identity thief establishes credit, *1250 conducts transactions, or secures benefits in the victim’s name, the crime would make little sense if the information at issue belonged to no one. In that sense, this case differs from Chin, in which we found it “implausible that Congress would have placed on the prosecution the often impossible burden of proving, beyond a reasonable doubt, that a defendant knew the youth he enticed was under eighteen.” Chin, 981 F.2d at 1280. And if experience proves our prediction wrong and the burden too onerous, the government is free to ask Congress to limit the statute’s knowledge requirement.
Second, as noted above, our interpretation does not mean that Villanueva-Sotelo escapes punishment for his crime, for he pled guilty to violating 18 U.S.C. § 1546(a), which provides: “Whoever knowingly ... uses, attempts to use, possesses, obtains, accepts, or receives ... [an] alien registration receipt card ... knowing it to be forged ... [s]hall be fined under this title or imprisoned.” Unlike section 1028A(a)(l), that statute unambiguously criminalizes Villanueva-Sotelo’s conduct. We affirm.

So ordered.