# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————————

No. 07-2660

———————————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Nicasio Mendoza-Gonzalez, | * | |
| | * | |
| Appellant. | * | |

———————————

Submitted: January 17, 2008
Filed: March 28, 2008

———————————

Before BYE, BEAM and GRUENDER, Circuit Judges.

———————————

GRUENDER, Circuit Judge.

Before the district court,[1] a jury convicted Nicasio Mendoza-Gonzalez of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1), based on his use of false identity documents in connection with his employment. Mendoza-Gonzalez now appeals his conviction, arguing that § 1028A(a)(1) requires the Government to prove that he knew the identification he used belonged to another actual person and that the

---

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

Government failed to do so. He also argues that the Government failed to meet its burden of proving that the identification he used belonged to an actual person. For the reasons discussed below, we affirm Mendoza-Gonzalez's conviction.

## I. BACKGROUND

On July 11, 2006, Mendoza-Gonzalez completed a Form I-9 in connection with his employment at a Swift & Company ("Swift") pork processing plant in Marshalltown, Iowa, in which he represented that he was a "citizen or national of the United States," and submitted a photo identification card in the name of Dinicio Gurrola III to verify his identity. After receiving this information from Mendoza-Gonzalez, Swift verified that the social security number on the identification matched the social security number assigned to Gurrola by the Commissioner of Social Security. On December 12, 2006, officials from Immigration and Customs Enforcement ("ICE") conducted a raid at the Swift plant. An ICE officer interviewed Mendoza-Gonzalez and identified him as a person who used the identity of another individual to gain employment at Swift.

In a five-count indictment, Mendoza-Gonzalez was charged with making a false claim of citizenship in violation of 18 U.S.C. § 1015(e), using false identification documents in violation of 18 U.S.C. § 1546(b)(1), using fraudulently obtained immigration documents in violation of 18 U.S.C. § 1546(a), making a false representation of a social security number in violation of 42 U.S.C. § 408(a)(7)(B), and aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). At the trial, the Government presented the testimony of two Swift human resource employees who testified that Mendoza-Gonzalez used the identification of Gurrola to gain employment at Swift, the ICE agent who initially interviewed Mendoza-Gonzalez after the raid at the plant, and Sarai Fenton, an investigator with the Inspector General for Social Security who presented evidence of the issuance of an initial social security

card to Gurrola as well as requests for duplicate cards, which the Government argues establishes that Gurrola was an actual person.

The jury convicted Mendoza-Gonzalez of all charges. On the first four counts he was sentenced to six months' concurrent imprisonment. The aggravated identity theft conviction under § 1028A(a)(1) requires a consecutive sentence of twenty-four months' imprisonment, resulting in a total sentence of thirty months' imprisonment for Mendoza-Gonzalez. He now appeals his conviction for aggravated identity theft under § 1028A(a)(1), arguing that the Government failed to meet its burden of proof because it failed to prove beyond a reasonable doubt that Mendoza-Gonzalez had actual knowledge that the identification he used belong to an actual person, that Gurrola was an actual person and that Gurrola was still a living person at the time Mendoza-Gonzalez fraudulently used his identification.

## II.    DISCUSSION

We review the district court's statutory interpretation de novo. *See United States v. Kirchoff*, 387 F.3d 748, 750 (8th Cir. 2004). In interpreting a statute we first "determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). If so, we apply the plain language of the statute. *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002). Only if the language is ambiguous may we look beyond the text. *See Staples v. United States*, 511 U.S. 600, 605 (1994). However, "[a] mere disagreement among litigants over the meaning of a statute does not prove ambiguity; it usually means that one of the litigants is simply wrong." *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 461 (1999).

The aggravated identity theft statute, 18 U.S.C. § 1028A(a)(1), provides that

> [w]hoever, during and in relation to any felony violation enumerated in [§ 1028A(c)], knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

Mendoza-Gonzalez argues that the term "knowingly" modifies not only "transfers, possesses, or uses," but also the phrase "of another person." This interpretation would require the Government to prove that a defendant knew the means of identification belonged to an actual person. *United States v. Villanueva-Sotelo*, 515 F.3d 1234 (D.C. Cir. 2008). The Government, alternatively, argues that "knowingly" only modifies "transfers, possesses, or uses" which would not require the Government to prove that the defendant knew the means of identification belonged to a real person. The Government contends that § 1028A(a)(1) requires only that the means of identification in fact belonged to a real person, not that the defendant knew that it did. *See United States v. Hurtado*, 508 F.3d 603 (11th Cir. 2007) (per curiam), *petition for cert. filed*, --- U.S.L.W. --- (U.S. Feb. 13, 2008) (No. 07-9429); *United States v. Montejo*, 442 F.3d 213 (4th Cir.), *cert. denied*, --- U.S. ---, 127 S. Ct. 366 (2006).

We begin our analysis by determining whether the language of § 1028A(a)(1) has a plain and unambiguous meaning with regard to the dispute in this case. *See Hurtado*, 508 F.3d at 609; *Montejo*, 442 F.3d at 215. "Knowingly" is an adverb, and "[g]ood usage requires that the limiting modifier, the adverb 'knowingly,' be as close as possible to the words which it modifies." *Montejo*, 442 F.3d at 215. "The fact that the word 'knowingly' – an adverb – is placed before the verbs 'transfers, possesses, or uses' indicates that 'knowingly' modifies those verbs, not the later language in the statute." *Hurtado*, 508 F.3d at 609 (citing *United States v. Jones*, 471 F.3d 535, 539 (4th Cir. 2006) ("[a]dverbs generally modify verbs")). The last antecedent rule holds

that qualifying words and phrases usually apply only to the words or phrases immediately preceding or following them, not to others that are more remote. *See* 2A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 47:33 (7th ed. 2007). "While [the last antecedent rule] is not an absolute and can assuredly be overcome by other indicia of meaning . . . construing a statute in accord with the rule is quite sensible as a matter of grammar." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003) (internal quotation omitted). Therefore, we find that the plain language of § 1028A(a)(1) limits "knowingly" to modifying "transfers, possesses, or uses" and not "of another person." Thus, we conclude that § 1028A(a)(1) is unambiguous and that the Government was not required to prove that Mendoza-Gonzalez knew that Gurrola was a real person to prove he violated § 1028A(a)(1). In reaching this conclusion, we agree with the Fourth and Eleventh Circuits' determinations that § 1028A(a)(1) is unambiguous. *See Hurtado*, 508 F.3d at 609; *Montejo*, 442 F.3d at 215.

The fact that Congress placed the adverb "knowingly" directly before the verbs "transfers, possesses, or uses" indicates that Congress intended "knowingly" to modify those verbs, and not the later language. *See Hurtado*, 508 F.3d at 609. If Congress had wished to extend the knowledge requirement to the entire provision, "it could have drafted the statute to prohibit the knowing transfer, possession, or use, without lawful authority, of the means of identification 'known to belong to another actual person.'" *Id.* "It is preposterous to think the same Congress that so plainly and firmly intended to increase the penalty . . . would then so limit its imposition as to require the Government to prove that the defendant *knows* he wrongfully possesses the identity 'of another person.'" *Villanueva-Sotelo*, 515 F.3d at 1255 (Henderson, J., dissenting). "Except for the forger himself, proving beyond a reasonable doubt that each of the thousands, if not millions, of holders of false green cards knows that the false means of identification he possesses is that 'of another person' would place on the prosecution an often impossible burden." *Id.* (internal quotation and alterations omitted).

Further, our own precedent supports our conclusion that a defendant need not know that the means of identification he transferred, possessed or used belonged to another actual person. *See United States v. Hines*, 472 F.3d 1038 (8th Cir.) (per curiam), *cert. denied*, --- U.S. ---, 128 S. Ct. 235 (2007). In *Hines* we explained that "[t]o support a conviction for aggravated identity theft, the government must prove that the defendant (1) knowingly used (2) the 'means of identification' of another person (3) without lawful authority (4) during and in relation to" a felony violation enumerated in § 1028A(c). *Id*. at 1039. As we identified the elements of the offense, it is clear that "knowingly" only modifies the verbs and not the later reference to "means of identification of another person." While we did not explicitly state that the Government need not prove that a defendant knew the means of identification was that of an actual person, we found that providing the name of an actual person to police satisfied the knowledge requirement. *Id*. at 1039-40. Although this issue was not directly addressed in *Hines*, because Hines clearly knew that the name and social security number he used belonged to an actual person, the court noted that "[t]he government satisfied the 'knowingly' requirement with Hines's admission that he provided another person's name to police. *Id*. at 1039. In support of that proposition, the court cited *United States v. Crounsset*, 403 F. Supp. 2d 475, 483 (E.D. Va. 2005), in which the Eastern District of Virginia held that § 1028A(a)(1) "does not require that the government prove . . . that defendant knew that the identifying information contained in the fraudulent passport belonged to an actual individual." *Id*. at 1040. Thus, our precedent strongly supports, if not compels, the conclusions we reach.

We acknowledge that we have reached a different conclusion than the D.C. Circuit which held that the statutory language of § 1028A(a)(1) was ambiguous and the court could therefore use the statutory structure, relevant legislative history and congressional purposes to interpret it. *See Villanueva-Sotelo*, 515 F.3d at 1243. Using legislative history, the court stated that the House Judiciary Committee Report accompanying the Identity Theft Penalty Enhancement Act contained multiple examples of identity theft which all involved defendants who knew the identification

they used belonged to another and concluded that Congress intended the increased sentence provided for in § 1028A(a)(1) to apply only to those defendants who knew the means of identification belonged to an actual person. *Id.* at 1243-44. However, as noted above, we will not look beyond the text of the statute if its plain language is unambiguous, as we conclude it is here.

Even if we were to look beyond the text of the statute, we would not agree with the conclusion reached by the D.C. Circuit. As the dissent in *Villanueva-Sotelo* points out, Congress clearly intended identity theft to be read generically. *Id.* at 1253 (Henderson, J., dissenting). Further, "[a] primary purpose of the statute was to increase the punishment for a defendant who 'wrongfully obtains and uses *another person's* personal data,'" which is clearly what occurred here. *See id.* at 1254 (Henderson, J., dissenting) (quoting H.R. Rep. No. 108-528 at 4). Therefore, even if we were to look at legislative history and congressional intent, we would still conclude that § 1028A(a)(1) does not require the Government to prove that the defendant knew that the means of identity belonged to another actual person.[2]

We recognize that the Supreme Court has in some circumstances interpreted the term "knowingly" in similarly worded criminal statutes to modify terms in addition to the verbs directly adjacent to "knowingly." *See, e.g.*, *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005); *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994); *Liparota v. United States*, 471 U.S. 419 (1985). However, in those

---

[2]District courts also have split on this issue. Many have concluded that the statute is unambiguous and does not require the Government to prove the defendant knew the means of identification was that of an actual person. *See, e.g.*, *United States v. Godin*, 489 F. Supp. 2d 118 (D. Me. 2007); *United States v. Aguilar-Morales*, 2007 WL 2903189 (N.D. Iowa Oct. 2, 2007). However, other district courts have concluded that the statute is ambiguous and requires the Government to prove the defendant knew the means of identification was that of an actual person. *See, e.g.*, *United States v. Salazar-Montero*, 520 F. Supp. 2d 1079 (N.D. Iowa 2007); *United States v. Beachem*, 399 F. Supp. 2d 1156 (W.D. Wash. 2005).

instances the Supreme Court was concerned about criminalizing unwitting, innocent and perhaps even constitutionally protected conduct.[3] In *X-Citement Video*, for example, the Court held that the term "knowingly" extended not only to the verbs that followed the term but also to the sexually explicit nature of the materials and the age of the children depicted because to hold otherwise would have allowed the Government to hold individuals who innocently received or sent packages not knowing they contained sexually explicit pictures of minors criminally liable. *X-Citement Video*, 513 U.S. at 69.

Here, there is no such concern that the statute could criminalize otherwise unwitting, innocent conduct. In fact, a defendant can only be convicted for violating § 1028A(a)(1) when he commits the offense "during and in relation to any felony violation enumerated in [§ 1028A(c)]." Mendoza-Gonzalez used Gurrola's documents while committing another felony, making a false representation of a social security number in violation of 42 U.S.C. § 408(a)(7)(B), which is a felony enumerated in § 1028A(c)(11). Moreover, the use of a means of identification of another person without lawful authority is not on its face innocent conduct. The conduct required to obtain a conviction under § 1028A(a)(1) does not compare to innocently receiving a package not knowing that it contains sexually explicit pictures of minors. *See Hurtado*, 508 F.3d at 610. Therefore, the reasons supporting the conclusions in *X-Citement Video* do not apply to § 1028A(a)(1).

---

[3]We faced a similar situation in *United States v. Cacioppo*, 460 F.3d 1012, 1017 (8th Cir. 2006). There we addressed whether the term "knowingly" in 18 U.S.C. § 1027 prohibited a defendant from concealing, covering up or failing to disclose facts she knew she was required to disclose or prohibited a defendant from concealing, covering up or failing to disclose certain facts, whether or not the defendant knew she was required to disclose them. *Id*. We concluded that § 1027 applied only when the defendant knew she was required to disclose those facts, because to hold otherwise would be to criminalize possibly innocent conduct where the defendant did not know she was required to disclose certain facts. *Id*. at 1018-19.

Mendoza-Gonzalez also argues that the Government failed to prove that Gurrola existed as a real person. We review the sufficiency of the evidence to sustain a conviction de novo, examining the record in the light most favorable to the verdict. *See United States v. Spears*, 454 F.3d 830, 832 (8th Cir. 2006). "We reverse only when no reasonable jury could find the defendant guilty beyond a reasonable doubt." *Id.*

To establish the existence of Dinicio Gurrola III, the Government presented the testimony of Sarai Fenton, an investigator with the Inspector General for Social Security. Fenton testified that the Commissioner of Social Security had issued a social security number to Dinicio Gurrola III and that the application contained the name, address, citizenship, sex, date of birth, parents' names and the date of application. The application bore the signature of Carolyn Gurrola and listed the place of birth for Dinicio Gurrola III as Bakersfield, California. Fenton further testified that a duplicate card was applied for in 1985 by Dionicio Gurrola, Jr., using a baptism certificate as identification, and that another card was applied for in 2001 in the name of Danny Gurrola, requesting that it be mailed to a prison in Corcoran, California. We believe this evidence, with all inferences drawn in the light most favorable to the verdict, was sufficient for a reasonable jury to conclude beyond a reasonable doubt that Gurrola existed as a real person.[4]

## III. CONCLUSION

Accordingly, we affirm Mendoza-Gonzalez's conviction.

_____

---

[4]Mendoza-Gonzalez also argues that the Government failed to prove that Gurrola was alive at the time Mendoza-Gonzalez used his identity. Section 1028A(a)(1) imposes no requirement that the Government prove that the person whose means of identification was used be alive, and Mendoza-Gonzalez cites no authority in support of this argument. We therefore reject this argument.