**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

RONALD J. GIANELLI,
            *Defendant-Appellant.*

No. 07-10233

D.C. No.
CR-86-20083-RMW

OPINION

Appeal from the United States District Court
for the Northern District of California
Ronald M. Whyte, District Judge, Presiding

Argued and Submitted
February 12, 2008—San Francisco, California

Filed March 20, 2008

Before: William C. Canby, Jr., David R. Thompson, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Thompson

2679

**COUNSEL**

Patrick James Sullivan, Oakland, California, for the defendant-appellant.

Richard A. Friedman, United States Department of Justice, Washington, D.C., for the plaintiff-appellee.

**OPINION**

THOMPSON, Senior Circuit Judge:

In May of 1987, Ronald J. Gianelli ("Gianelli") pleaded guilty to one count of mail fraud, 18 U.S.C. § 1341 ("mail

fraud"), in the Northern District of California. As part of his sentence he was ordered to pay restitution to the federal government in the amount of $125,000. Gianelli did not appeal that judgment.

Gianelli now appeals a May 2007 district court order reinstating an October 17, 2001 Order Imposing Payment Plan aimed at collecting the remaining amount of restitution owed. Gianelli contends that the government is barred from enforcing the restitution judgment because ten years from the date of that judgment passed on May 13, 1997, and California state law precludes enforcement of a judgment after that period of time. He further argues that the original $125,000 restitution amount was improper because it was not predicated upon the government's actual loss, as required by *Hughey v. United States*, 495 U.S. 411 (1990).

We have jurisdiction under 28 U.S.C. § 1291. We conclude that Gianelli waived the right to appeal the amount of the restitution order by failing to file a direct appeal, and we affirm the district court's May 1, 2007 order reinstating the October 17, 2001 payment plan.

## I.   BACKGROUND

An indictment filed on July 31, 1986, in the United States District Court for the Northern District of California charged Gianelli with six counts of mail fraud, conspiracy to defraud the United States, and 17 counts of receiving kickbacks on subcontracts for Defense Department procurement contracts. Gianelli pleaded guilty to one count of mail fraud. The remaining counts were dismissed. He was sentenced on May 13, 1987 to five years of imprisonment, with all but six months suspended, and ordered to pay $125,000 in restitution to the United States. The remaining counts were dismissed.

On October 29, 1991, while Gianelli was on probation, he entered into an agreement with the Probation Office that he

would make payments of $100 per month toward the satisfaction of his restitution debt. Gianelli substantially made the payments as agreed. Then, on December 15, 1999, in an attempt to satisfy the outstanding balance of $109,300, the government applied for a writ of execution under the Federal Debt Collection Procedures Act, 28 U.S.C. § 3203. The government wanted to levy the writ on a house and 52 acres of land belonging to Gianelli. After numerous objections, the district court, by a September 19, 2001 order, adopted the magistrate judge's finding that the United States was "entitled to issuance of the writ," but the court suggested an alternative payment plan by which "in lieu of execution . . . it would be just . . . to allow [Gianelli] to pay his debt in monthly installments, including interest so as to provide the United States with the full value to which it is entitled . . . ."

On September 25, 2001, Gianelli agreed to the installment payment alternative, but expressly reserved his objection to the government's right to collect his restitution obligation. On October 17, 2001, the district court entered the installment payment order. On October 26, 2001, Gianelli timely filed his notice of appeal from that order. Gianelli argued that the district court lacked authority to order him to make further payment on his restitution obligation because under California state law that obligation expired in 1997, ten years after the restitution judgment in the case.

On February 3, 2003, we vacated the district court's October 17, 2001 installment payment order, and remanded for further proceedings to determine whether restitution was ordered under the Federal Probation Act ("FPA")[1], or the Victim Witness Protection Act ("VWPA").[2] *See United States v.*

---

[1]18 U.S.C. § 3651, *repealed by* Sentencing Reform Act of 1984, Pub. L. No. 98-473, § 212(a)(2), 98 Stat. 1837 (1984) (effective Nov. 1, 1987).

[2]Pub. L. No. 97-291, § 5(a), 96 Stat. 1248 (1982) (codified at 18 U.S.C. §§ 3579(h) & 3580), *renumbered by* Sentencing Reform Act of 1984, Pub. L. No. 98-473, § 212(a)(1), 98 Stat. 1837 (1984) (now at 18 U.S.C. §§ 3663 and 3664).

*Gianelli*, 55 Fed. App'x. 831, 832 & n.1 (9th Cir. 2003). We did not reach the question whether the restitution obligation was still extant. *Id.*

On remand, the district court determined that the statutory basis for the restitution order was the VWPA. The district court then entered its May 1, 2007 order, reinstating the October 17, 2001 payment plan. The district court found that Gianelli had waived his argument as to the propriety of the amount of restitution by failing to appeal the 1987 judgment. The district court thus declined to consider Gianelli's argument that the original $125,000 restitution amount was not the government's actual loss as required by the VWPA under *Hughey*, 495 U.S. 411. The district court determined that the "VWPA did not at the time of defendant's offense limit the time in which [restitution] could be enforced." The district court also noted that "[d]uring the pendency of this remand . . . the United States received payment of $80,901.88 from the [voluntary] escrow sale of [Gianelli's] real property . . . [and] [t]he parties have stipulated that if the court finds that the restitution order is not time-barred . . . these funds will be applied to and fully satisfy defendant's restitution debt, absent a contrary order from the court of appeals." Gianelli now appeals this May 1, 2007 order.

## II.  STANDARD OF REVIEW

We review de novo questions of statutory interpretation. *United States v. Horvath*, 492 F.3d 1075, 1077 (9th Cir. 2007). "Whether an appellant has waived his statutory right to appeal is [also] a matter of law reviewed de novo." *United States v. Shimoda*, 334 F.3d 846, 848 (9th Cir. 2003) (internal citations omitted).

## III.  DISCUSSION

### A.  Enforcement of Restitution under the VWPA

On remand, the district court determined that the restitution order was predicated upon the VWPA. Gianelli does not dis-

pute this determination. He argues that, under the then existing version of the VWPA, the government is forbidden from collecting the balance of his restitution debt because under California state law the ability to collect the restitution balance expired ten years after the date of his conviction.

**[1]** The applicable version of the VWPA gave no explicit time limit for the enforcement of judgments under it. The Act provided that, "An order of restitution may be enforced by the United States or a victim named in the order to receive the restitution in the same manner as a judgment in a civil action." 18 U.S.C. § 3579(h), *renumbered by* Sentencing Reform Act of 1984, Pub. L. No. 98-473, § 212(a)(1), 98 Stat. 1837 (1984), *repealed by* Antiterrorism & Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 205(a)(2), 110 Stat. 1214, 1230 (1996). To determine what this provision means, Gianelli relies upon Federal Rule of Civil Procedure 69(a)(1) which provides:

> A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—*must accord with the procedure of the state where the court is located,* but a federal statute governs to the extent it applies.

(emphasis added). Gianelli also points out that the law of California, which is the "state where the court [in his case] is located," provides,

> Except as otherwise provided by statute, upon the expiration of 10 years after the date of entry of a money judgment or a judgment for possession or sale of property: (a) The judgment may not be enforced. (b) All enforcement procedures pursuant to the judgment or to a writ or order issued pursuant to the judgment shall cease. (c) Any lien created by an

enforcement procedure pursuant to the judgment is extinguished.

Cal. Civ. Proc. Code § 683.02 (1987). In view of this, Gianelli argues that the government may no longer collect restitution from him, because ten years after the date of entry of the restitution judgment passed on May 13, 1997.[3]

**[2]** The government and the district court, however, argue persuasively that 18 U.S.C. § 3579(h) cannot be interpreted to constrain the federal government's ability to enforce its own restitution judgments because, "as a sovereign, the United States is subject to a limitations period only when Congress has expressly created one." *United States v. Thornburg*, 82 F.3d 886, 893 (9th Cir. 1996) (citing *Guaranty Trust Co. v. United States*, 304 U.S. 126, 133 (1938), and quoting *United States v. Dos Cabezas Corp.*, 995 F.2d 1486, 1489 (9th Cir. 1993) ("In the absence of a federal statute expressly imposing or adopting one, the United States is not bound by any limitations period.")); *see also United States. v. Overman*, 424 F.2d 1142, 1147 n.7 (9th Cir. 1970) (concluding that enforcement of a federal tax lien was not subject to state limitations, and pointing out "the established rule that a state statute of limitation cannot run against the United States" without permission of a federal statute) (citing *United States v. Summerlin*, 310 U.S. 414, 416 (1940)); *Smith v. United States*, 143 F.2d 228, 229 (9th Cir. 1944) (interpreting statutory language which provided that a judgment imposing a fine could be enforced, "in like manner as judgments in civil cases are enforced," as imposing no limitation on the federal government's ability to enforce the judgment and explaining "[i]n the absence of a specific act of Congress to the contrary, state statutes of limitation do not bind the sovereign").

**[3]** We agree with the position of the district court. Because no federal statute expressly permits state statutes of limita-

---

[3]Judgment was entered in his case on May 13, 1987.

tions to constrain the government's ability to enforce a judgment granted under the VWPA, Gianelli's argument that the government lacks the ability to enforce the restitution order after the passage of ten years fails.

## B.   Appeal of Restitution Amount

Gianelli also argues that the sentencing portion of the 1987 judgment that required him to pay restitution in the amount of $125,000 was improper under *Hughey*. Interpreting 18 U.S.C. §§ 3579 and 3580 in *Hughey*, the Supreme Court held that "the language and structure of the Act make plain Congress' intent to authorize an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction." *Hughey*, 495 U.S. at 413.

[4] Gianelli was sentenced on May 13, 1987. He never appealed that sentence. The first time he filed an appeal related to his case was October 26, 2001. In that appeal, he challenged the October 17, 2001 district court Order Imposing Payment Plan for his outstanding restitution balance.[4]

[5] Gianelli waived his ability to appeal the amount of restitution ordered in the 1987 judgment by failing to file a direct appeal from that judgment. *See United States v. James*, 109 F.3d 597, 599 (9th Cir. 1997) (concluding that where a defendant fails to raise an issue in his first direct appeal he waives the issue); *United States v. Schlesinger*, 49 F.3d 483, 485 (9th Cir. 1994) (concluding that "nonconstitutional sentencing errors that have not been raised on direct appeal have been waived and generally may not be reviewed by way of [a

---

[4]Gianelli raised his *Hughey* objection in his reply brief related to that 2001 appeal. This does not affect the outcome of his case. In addition to the fact that arguments raised for the first time in a reply brief are generally considered waived, *Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990), as discussed below, Gianelli waived his ability to appeal the amount of his restitution judgment by not timely appealing that judgment.

habeas petition]"). *But see United States v. Broughton-Jones*, 71 F.3d 1143, 1147 (4th Cir. 1995) (holding, in the context of a valid waiver of appeal executed pursuant to a plea agreement, that "[b]ecause a restitution order imposed when it is not authorized by the VWPA is no less illegal than a sentence of imprisonment that exceeds the statutory maximum, appeals challenging the legality of restitution orders are . . . outside the scope of a defendant's otherwise valid appeal waiver.") (internal quotation marks omitted).

**[6]** While Gianelli has not asserted any authority under which he might bring a collateral attack of the restitution order, in the somewhat analogous context of federal habeas relief, 28 U.S.C. § 2255, "an error of law [or fact] does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice."[5] *United States v. Addonizio*, 442 U.S. 178, 185-87 (1979) (internal citations and quotation marks omitted) (noting that a "complete miscarriage of justice" would occur if a court refused to vacate a sentence where the conduct for which a defendant was convicted was subsequently made legal) (citing *Davis v. United States*, 417 U.S. 333 (1974)). *See also United States v. Wilcox*, 640 F.2d 970, 973 (9th Cir. 1981) ("Errors of law which might require reversal of a conviction or sentence on appeal do not necessarily provide a basis for [habeas relief].").

**[7]** The indictment which contained the count to which Gianelli pleaded guilty alleged that Gianelli and others, as a result of an illegal scheme, received approximately $160,000 in cash. The sentencing court, by way of the Presentence Report, was aware of this amount, and was aware of Gianelli's assets, income, and liabilities. The Presentence Report

---

[5]Gianelli cannot present his claim for relief from the restitution order as a habeas petition because he is not seeking release from custody, and because review of restitution orders is not properly brought in a habeas petition. *See United States v. Thiele*, 314 F.3d 399, 401 (9th Cir. 2002).

also indicated that Gianelli "appears to have used approximately $50,000 from the kickback scheme in the purchase of his current residence in 1983," and that Gianelli "appears to have been the primary mover of the scheme, and without his knowledge and cooperation the scheme could not have been carried out." In addition, after our remand in Gianelli's appeal of the October 17, 2001 order, the district court noted, "[d]uring the pendency of this remand . . . the United States received payment of $80,901.88 from the [voluntary] escrow sale of [Gianelli's] real property . . . . The parties have stipulated that if the court finds that the restitution order is not time-barred . . . these funds will be applied to and fully satisfy defendant's restitution debt, absent a contrary order from the court of appeals." In light of these factors, it would not be a "complete miscarriage of justice" if Gianelli were precluded from collaterally attacking the amount of his restitution obligation.

Gianelli argues that his right to challenge the amount of the restitution judgment should not be forfeited by reason of his failure to file a direct appeal back in 1987 because the decision in *Hughey* did not come down until 1990. This argument is unpersuasive.

In 1987 when Gianelli was sentenced, the VWPA provided,

> The court, in determining whether to order restitution under section 3579 of this title and the amount of such restitution, *shall consider the amount of the loss* sustained by any victim *as a result of the offense*, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

*Hughey*, 495 U.S. at 416-17 (quoting 18 U.S.C. § 3580(a) (1982)) (emphasis added). The *Hughey* court simply reaffirmed what the Act had already "ma[d]e plain," that it was

"Congress' intent to authorize an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction." *Id.* at 413. If Gianelli thought the amount of restitution ordered was inappropriate back in 1987, he could have appealed that order. *See Schlesinger*, 49 F.3d at 486 (holding that failure to raise an issue on direct appeal was not excusable where "there is absolutely no reason why [the defendant] should not have known of, and been able to appeal, the alleged errors immediately") (internal quotation marks omitted).

Gianelli further argues that he could not have appealed the amount of the restitution order earlier because it was not until May 2007 that the district court determined the VWPA was the basis for the order. This argument is likewise unpersuasive. The two possible bases for the restitution order in 1987 were the VWPA and the FPA. *See Gianelli*, 55 Fed. App'x. at 832. As we have previously stated, Giannelli could have appealed the amount of the restitution order under the VWPA if he had been inclined to bring that appeal in 1987. In addition, at the time of Gianelli's sentencing in May 1987, the FPA provided that a defendant "[m]ay be required to make restitution or reparation to aggrieved parties *for actual damages or loss caused by the offense* for which conviction was had." 18 U.S.C.A. § 3651 (repealed Nov. 1, 1987). If Gianelli had been inclined, when he was sentenced, to challenge the amount of his restitution obligation on the ground he now asserts, he could have done so under the then express language of the FPA. *See Schlesinger*, 49 F.3d at 486.

## IV. CONCLUSION

**[8]** Because the VWPA does not express the intent that the federal government will be bound by state statutes of limitations in the enforcement of restitution judgments, and because neither that Act nor any other federal statute limits the time for enforcement of restitution judgments under the VWPA, the government may enforce against Gianelli the VWPA resti-

tution judgment at any time. Gianelli waived his objection to the amount of the 1987 restitution order by failing to file a timely direct appeal.

The judgment of the district court is **AFFIRMED**.