**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

ROBERTO MIRANDA-LOPEZ,
            *Defendant-Appellant.*

No. 07-50123

D.C. No.
CR-06-00706-L

OPINION

Appeal from the United States District Court
for the Southern District of California
M. James Lorenz, District Judge, Presiding

Argued and Submitted
May 14, 2008—Pasadena, California

Filed July 17, 2008

Before: Barry G. Silverman, Marsha S. Berzon, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Silverman;
Partial Concurrence and Partial Dissent by Judge Bybee

**COUNSEL**

Keith H. Rutman, San Diego, California, for the defendant-appellant.

Kyle W. Hoffman and Annalou Tirol, United States Department of Justice, United States Attorneys Office, San Diego, California, for the plaintiff-appellee.

**OPINION**

SILVERMAN, Circuit Judge:

Today we join the D.C. Circuit in holding that the crime of aggravated identity theft, 18 U.S.C. § 1028A(a)(1), requires proof that, among other things, the defendant knew that the means of identification belonged to another person. It is not enough to prove only that the defendant knew he was using a false document. *See United States v. Villanueva-Sotelo*, 515 F.3d 1234 (D.C. Cir. 2008).

## I.  FACTS

Roberto Miranda-Lopez, a citizen of El Salvador who had previously been deported from the United States, was indicted for trying to enter the United States using a resident alien card in the name of "Jorge A. Garcia Fregoso." He was charged with two counts—illegal reentry under 8 U.S.C. § 1326(a) and (b) and aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1).[1]

At Miranda-Lopez's jury trial, Customs and Border Protection Officer Terence Gibbs testified that he first came into contact with Miranda-Lopez at about 6:45 a.m. on March 8, 2006 at the San Ysidro, California port of entry. When he arrived at Officer Gibbs's border inspection booth, Miranda-Lopez was sitting in the front-passenger seat of a car driven by a man later identified as Salvador Rodriguez. According to Officer Gibbs, Miranda-Lopez, Rodriguez and a third passenger were all awake and alert when the car approached his border inspection booth. Rodriguez handed Officer Gibbs three identification cards, and Officer Gibbs immediately noticed that the pictures on the cards did not match the three individu-

---

[1]Miranda-Lopez was also charged with fraudulent use of an immigration document under 18 U.S.C. § 1546(a), but that charge was later dismissed by the government.

als in the car. Officer Gibbs testified that he asked Miranda-Lopez if he was Jorge A. Garcia-Fregoso as indicated by one of the permanent resident cards and that Miranda-Lopez responded "yes." Officer Gibbs then asked for Miranda-Lopez's hand and determined that his fingerprint did not match the fingerprint on the card. Suspecting that all three of the car's occupants were imposters, Officer Gibbs escorted the group to secondary inspection where a second Customs and Border Protection Officer determined that the three men did not match the identification documents they asserted to be theirs.

Before trial, the government and Miranda-Lopez entered into the following written stipulation:

1. On March 8, 2006, Defendant was not a citizen of the United States; Defendant was a citizen of El Salvador.

2. Defendant was ordered deported from the United States on September 20, 2005, and was physically removed from the United States to El Salvador on November 23, 2005.

3. On March 8, 2006, Defendant had not received consent to reenter or apply for reentry into the United States from the Secretary of the Department of Homeland Security or his designated successor.

4. The I-551, or Resident Alien Card, bearing the name "Jorge A. Garcia Fregoso" was a validly-issued Resident Alien Card on March 8, 2006.

5. Any transfer, possession or use of this card by someone other than Jorge A. Garcia Fregoso would be without lawful authority.

    6.   The parties do not dispute the identity of Jorge A. Garcia Fregoso.

    7.   This stipulation is being entered into freely and voluntarily by all parties.

At the close of the government's evidence, Miranda-Lopez made a motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 arguing, without elaboration, that the government failed to meet its burden of proof. The district court summarily denied the motion.

Testifying on his own behalf, Miranda-Lopez said that on the day before he encountered Officer Gibbs, during a visit with his girlfriend in Tijuana, he began drinking tequila early in the day. Later that evening, he met Salvador Rodriguez while drinking margaritas in a bar. At around 2:00 a.m. the next morning, Miranda-Lopez decided he ought to leave the bar before he fell asleep and accepted Rodriguez's offer to give him a ride home. Miranda-Lopez testified that he got into Rodriguez's car, but when Rodriguez went back to the bar to get something, Miranda-Lopez fell asleep in the car. He said he did not wake up until Officer Gibbs grabbed his hand to examine his fingerprint. Miranda-Lopez testified that he had no intent to enter the United States, that he had never seen the Garcia-Fregoso permanent resident card before, and that no officer ever asked if one of the identification cards belonged to him. Further, Miranda-Lopez stated that he failed to tell the border officers that the identification card did not belong to him because he was "tongue-tied," "shocked," and "petrified."

The district judge gave the following jury instruction with respect to aggravated identity theft:

      The defendant is charged in Count Three of the indictment with aggravated identity theft in violation of Section 1028A of Title 18 of the United States

Code. In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, during and in relation to a violation of Section 1326 of Title 8 of the United States Code, attempted reentry of deported alien;

Second, the defendant knowingly transferred, possessed, or used a means of identification of another person; and

Third, the defendant acted without lawful authority.

Miranda-Lopez did not object to this instruction and, indeed, offered these same elements in his trial memorandum.

At the close of all evidence and after the jury began deliberating, Miranda-Lopez renewed his Rule 29 motion, arguing that the government failed to prove that he had possession of the false identification, that he knew about it, or that he intended to use it. The jury then found Miranda-Lopez guilty of both the unlawful reentry and aggravated identity theft charges. After the jury returned its verdict, the district judge denied Miranda-Lopez's Rule 29 motion. In doing so, the judge, without any prompting, stated his own belief that the *real* issue was whether or not Miranda-Lopez knew that the identification card belonged to an actual person. However, the district judge deemed the issue waived because of the defense's failure to raise it.

A week after the jury was discharged, Miranda-Lopez filed a timely written Rule 29 motion arguing, for the first time, that the government failed to prove that Miranda-Lopez actually knew that the identification belonged to another person. The district court denied this motion and stated both that the issue was waived, and that on the merits, proof that Miranda-

Lopez actually knew the identification belonged to another person was not required to sustain a conviction under § 1028A(a)(1). In so holding, the district judge expressed doubt about whether the government had proved that Miranda-Lopez knew the identification belonged to someone else, but did not entertain argument on the subject, deeming such proof immaterial.

The district court sentenced Miranda-Lopez to 39 months for unlawful reentry and an additional mandatory consecutive sentence of 24 months for aggravated identity theft as required by 18 U.S.C. § 1028A(b)(2).

Now, on appeal, Miranda-Lopez challenges only his § 1028A(a)(1) conviction and argues that the district court erred in its jury instructions and denial of his final Rule 29 motion. We have jurisdiction under 28 U.S.C. § 1291.

## II.   DISCUSSION

### A.   18 U.S.C. § 1028A(a)(1)

[1] 18 U.S.C. § 1028A(a)(1) states:

> Whoever, during and in relation to any felony violation enumerated in subsection (c), *knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person* shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

(emphasis added).[2] The statute further requires that the two-year sentence be served consecutively. 18 U.S.C. § 1028A(b).

---

[2]"A means of identification" is defined as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual," including alien registration numbers. 18 U.S.C. § 1028(d)(7).

Subsection (c) lists eleven categories of specified felonies, including 8 U.S.C. § 1326, the crime of which Miranda-Lopez was convicted.

The issue here is whether the defendant must know that the identification he uses belongs to another person. In other words, does the adverb "knowingly" in the statute modify "of another person" or merely "transfers, possesses, or uses"? We review de novo this question of statutory interpretation. *See United States v. Gianelli*, 519 F.3d 962, 965 (9th Cir. 2008).

In *Liparota v. United States*, 471 U.S. 419 (1985), the Supreme Court analyzed statutory language punishing " 'whoever *knowingly* uses, transfers, acquires, alters, or possesses coupons or authorization cards *in any manner not authorized by [the statute] or the regulations . . . .' " *Id.* at 420 (emphases added, alteration in original) (quoting 78 Stat. 708, as amended, 7 U.S.C. § 2024(b)(1)). The government argued that the statute only requires proof that the acquisition, alteration, or possession of the cards was *in fact* done in a manner not authorized by law. *Id.* at 423. The defendant contended that the statute requires proof that the defendant *knew* that the acquisition, alteration, or possession was not authorized by law. *Id.* When faced with these two plausible interpretations of this statute, the Court held that "[e]ither interpretation would accord with ordinary usage," quoting a treatise's discussion of an analogous situation: " '[a]s a matter of grammar the statute is ambiguous; it is not at all clear how far down the sentence the word 'knowingly' is intended to travel . . . .' "). *Id.* at 424, 425 n. 7 (quoting W. LaFave & A. Scott, Criminal Law § 27 (1972)); *see also United States v. Ching Tang Lo*, 447 F.3d 1212, 1229 (9th Cir. 2006).

**[2]** 18 U.S.C. § 1028A(a)(1), similarly, can plausibly be interpreted to require knowledge only of the transfer, possession, or use of a means of identification. Indeed, several circuits have come to that conclusion. *See United States v. Mendoza-Gonzalez*, 520 F.3d 912, 915 (8th Cir. 2008); *United States v. Hurtado*, 508 F.3d 603, 609 (11th Cir. 2007); *United States v. Montejo*, 442 F.3d 213, 215 (4th Cir. 2006). As we say, this is a plausible reading. On the other hand, we fail to see how either logic or grammar necessarily makes that the

*only* plausible reading. It is not unreasonable to read "knowingly" to modify all of the subsequent phrases in the sentence, as the Court did in *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 77-78 (1994). In *X-Citement Video*, the Supreme Court analyzed a similarly-structured statute that penalizes "[a]ny person who . . . *knowingly* transports . . . any visual depiction, if- (A) the producing of such visual depiction involves *the use of a minor* engaging in sexually explicit conduct . . . ." 513 U.S. at 68 (emphases added) (quoting 18 U.S.C. § 2252). The Supreme Court held that, in light of underlying policies and presumptions, the "knowingly" mens rea requirement extends to "the use of a minor" found in subsection (A). *Id.* at 78. In particular, the Supreme Court observed that "it is difficult to conclude that the word 'knowingly' modifies one of the elements in [a] subsection[ ] . . . but not the other." *Id.* at 77-78. Justice Stevens emphasized this point in his concurrence by stating, "In my opinion, the normal, commonsense reading of a subsection of a criminal statute introduced by the word 'knowingly' is to treat that adverb as modifying each of the elements of the offense identified in the remainder of the subsection." *Id.* at 79.

In holding that the language of § 1028A(a)(1) is ambiguous, we follow the D.C. Circuit's reasoning in *United States v. Villanueva-Sotelo*, 515 F.3d 1234 (D.C. Cir. 2008).[3] There, Villanueva-Sotelo, a previously deported Mexican national, presented a police officer with a permanent resident card displaying his own name and photograph and an alien registration number. *Id.* at 1236. Villanueva-Sotelo knew the card was a fake, but, as the government concedes, there was no evidence that he knew that the alien registration number actually belonged to another person. *Id.* Villanueva-Sotelo pleaded guilty to unlawful reentry and possession of a fraudulent immigration document and moved to dismiss the aggra-

---

[3]We note that the district court ruled on the written Rule 29 motion on March 12, 2007, and that *Villanueva-Sotelo* was not decided until February 15, 2008.

vated identity theft charge, arguing that the government could not prove that he knew the alien registration number belonged to another person. *Id.*

**[3]** After a detailed grammatical analysis, the D.C. Circuit held that the language of § 1028A(a)(1) is ambiguous both because nothing requires that "knowingly" extend only through "means of identification" and because it had previously found similarly structured statutes to be ambiguous. *Id.* at 1237-43. The D.C. Circuit also relied on the Supreme Court's holding in *Liparota*, 471 U.S. at 424, that a similar knowledge requirement was ambiguous. *Id.* at 1241-42. Having found that the language was ambiguous, the D.C. Circuit then turned to the statutory structure and legislative history to determine what Congress intended in passing § 1028A. *Id.* at 1243-46. After a careful examination of the legislative scheme and history, the D.C. Circuit held that Congress intended to target identity *thieves* and not the mere "accidental misappropriation" of another's identification. *Id.* at 1246. *But see id.* at 1252-55 (Henderson, J., dissenting). We recognize, however, that the meaning of legislative history, like beauty, is in the eye of the beholder. In this case, the legislative history does not definitely resolve the question of what "knowingly" is meant to modify.

The dissent agrees with us thus far. Dis. op. at 8861 (agreeing that statutory language and legislative history are ambiguous). The dissent would nonetheless construe the statute so that "knowingly" does not modify "of another person," solely because such a construction supposedly would yield "absurd" results in the following subsection, 18 U.S.C. § 1028A(a)(2). Dis. op. at 8863. In that subsection, Congress provided a sentencing enhancement for any person who, during certain enumerated terrorism offenses, "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person or a false identification document." Our dissenting colleague submits that, if "knowingly" modifies "of another person" in this subsection, the modification is super-

fluous because "[a] person who knowingly transfers a means of identification without lawful authority must necessarily know that the identification either belongs to another person or that it is false; there are no other choices." Dis. op. at 8863.

If we accept the dissent's assertion that "there are no other choices," the provision contains unavoidable surplusage however construed. The *entire phrase* "of another person or a false identification document" could be excised from the statute if, as Judge Bybee argues, when a person "knowingly . . . uses, without lawful authority, a means of identification," he has used either someone else's identification or a false identification;[4] "without lawful authority" would then alone suffice, without more, and the addition of "knowingly" would not make the provision any more superfluous than it already is.[5] As modifying "of another person" with "knowingly" thus does not lead to results that are any more "absurd" or "inconsistent," *see* dis. op. at 8863, 8865, than subsection (a)(2) is without the modification, we continue to find the statutory provision ambiguous.

**[4]** Which brings us to the rule of lenity. The "longstanding" rule of lenity requires us to resolve any ambiguity in the scope of a criminal statute in favor of the defendant. *Liparota*, 471 U.S. at 427; *see also United States v. Santos*, 128 S.Ct. 2020, 2025 (2008) (plurality opinion) ("Under a long line of our decisions, the tie must go to the defendant."); *id.* at 2033-34 (Stevens, J., concurring in judgment) (relying on the rule of lenity in reaching judgment). Although the rule of lenity does not apply when it would require an interpretation that "conflict[s] with the implied or expressed intent of Congress,"

---

[4]The dissent assumes that "knowingly" modifies "without lawful authority," a construction that the government has not challenged.

[5]Most likely, the phrase "a means of identification of another person or a false identification document" was included simply to distinguish this provision from the preceding one — § 1028A(a)(1) — which applies only to the use of another's identification.

*id.*, the interpretation urged by Miranda-Lopez does not pose any such conflict. Construing the statute in the defendant's favor, we thus hold that the government was required to prove that Miranda-Lopez knew that the identification belonged to another person. This is not an insurmountable burden, especially in a case where the identification document contains someone else's photo and does not appear to be a fake. *See Villanueva-Sotelo*, 515 F.3d at 1249 ("[P]roving the defendant knew the stolen identification belonged to another person should present no major obstacle, as such knowledge will often be demonstrated by the circumstances of the case.").

## B.   Jury Instructions

The district court instructed the jury that it must find that "the defendant knowingly transferred, possessed, or used a means of identification of another person." In essence, the district court repeated the statutory language of § 1028A(a)(1) without making clear whether or not knowledge that the identification belonged to another person was required. Miranda-Lopez did not challenge this jury instruction at the time of trial and offered the same formulation of the § 1028A(a)(1) charge in his trial memorandum. Thus, we review the district court's jury instructions for plain error. *See* Fed. R. Crim. P. 52(b); *Jones v. United States*, 527 U.S. 373, 388 (1999); *United States v. Delgado*, 357 F.3d 1061, 1065 (9th Cir. 2004). "Plain error requires an (1) error, (2) that is plain, and (3) that affects substantial rights. If these three conditions are met, we may exercise our discretion to notice the error but only if it (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Delgado*, 357 F.3d at 1065 (internal quotations and citation omitted).

**[5]** Here, the district court erred by failing to instruct that § 1028A(a)(1) requires that the defendant know the identification belongs to another person. However, that error was not plain because, at the time the issue reached us, there was a "circuit split, [a] lack of controlling authority, and . . . at least

some room for doubt about the outcome of [the] issue." In such circumstances, any error "cannot" be plain. *United States v. Thompson*, 82 F.3d 849, 856 (9th Cir. 1996); *see also United States v. De La Fuente*, 353 F.3d 766, 769 (9th Cir. 2003) ("An error cannot be plain where there is no controlling authority on point and where the most closely analogous precedent leads to conflicting results.").

## C. Rule 29 Motion

In his final Rule 29 motion made a week after the jury rendered its verdict, Miranda-Lopez argued, for the first time, that the government failed to prove an essential element of § 1028A(a)(1)—that he knew that the identification belonged to another person. The district court denied this motion, apparently on waiver grounds. However, the district judge explicitly stated that he had mulled over the knowledge requirement issue and "concluded, based on the rationale of the Fourth Circuit in *Montejo*, [442 F.3d 213,] that proof that the defendant knew that the identification belonged to another actual person is not required to sustain a conviction under [§] 1028A."

Rule 29 provides that defendant can move for "a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "A defendant may move for a judgment of acquittal, or renew such a motion, within 7 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c)(1). Moreover, "[a] defendant is not required to move for a judgment of acquittal before the court submits the case to the jury as a prerequisite for making such a motion after jury discharge." Fed. R. Crim. P. 29(c)(3). As the text of the rule makes clear, Miranda-Lopez did not waive the issue by failing to raise it until after the jury was discharged. In any case, the district court expressly considered the knowledge issue and made a reasoned ruling.

**[6]** In ruling on Miranda-Lopez's post-verdict motion for a judgment of acquittal, the district judge operated on the premise that the statute did not require proof of the defendant's knowledge that the identification belonged to someone else. We have explained why this premise was incorrect. The district court should now go back and reconsider Miranda-Lopez's final Rule 29 motion, giving both sides the opportunity to argue whether the evidence sufficiently proved that Miranda-Lopez knew that the identification belonged to another person.

**REVERSED and REMANDED.**

---

BYBEE, Circuit Judge, concurring in part and dissenting in part:

This case surely proves Justice Johnson's maxim: "One half the doubts in life arise from the defects of language." *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 232 (1824). I agree with much that the majority has written.[1] I agree, for example, that 18 U.S.C. § 1028A(a)(1) is capable of multiple, reasonable interpretations. I further agree that the legislative history provides few clues for resolving the ambiguity. *Compare United States v. Villanueva-Sotelo*, 515 F.3d 1234, 1243-46 (D.C. Cir. 2008) *with id.* at 1252-55 (Henderson, J., dissenting). If I stopped reading the statute where the majority did, I would agree that the rule of lenity applies and I would join the opinion in full. I dissent from parts II.A and II.C of the majority opinion to point out a logical conundrum, one that I think has been overlooked in the discussions thus far.

---

[1] I agree that the district court did not commit plain error when it repeated the statutory language in the jury instruction in light of the fact that our court had never resolved this statutory conundrum, and there was a circuit split on the issue. I therefore concur in Part II.B of the majority opinion.

## I

I find the statutes maddeningly difficult to deal with. The statute at issue here, 18 U.S.C. § 1028A(a)(1), reads in full:

> Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

For reasons well explained, the majority reads this provision as if it read:

> Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification *knowing that it belongs to* another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

So far, so good. I think that this is a reasonable reading of § 1028A(a)(1), read in isolation. *See United States v. Williams*, 128 S Ct. 1830, 1839 (2008) (applying "knowingly" to every element of a statute because there was no indication that "grammar or structure enable[d] the challenged provision or some of its parts to be read apart from the 'knowingly' requirement.")

Here is the problem. At the same time that Congress adopted § 1028A(a)(1), which addresses aggravated identity theft in general, it also adopted § 1028A(a)(2), which addresses aggravated identity theft in the context of a terrorism offense. That section provides in full:

> Whoever, during and in relation to any felony violation enumerated in section 2332b(g)(5)(B), know-

ingly transfers, possesses, or uses, without lawful authority, a means of identification of another person or a false identification document shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 5 years.

18 U.S.C. § 1028A(a)(2). In form, subsections (a)(1) and (a)(2) are identical. After today's decision, we must read the two consistently. That is, we must also read § 1028A(a)(2) as if it read:

> Whoever, during and in relation to any felony violation enumerated in section 2332b(g)(5)(B), knowingly transfers, possesses, or uses, without lawful authority, a means of identification *knowing that it belongs to* another person or is a false identification document shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 5 years.

When read into this provision, however, the phrase "knowing that it belongs to" is superfluous. A person who knowingly transfers a means of identification without lawful authority must necessarily know that the identification either belongs to another person or that it is false; there are no other choices. It makes no sense to read into subsection (a)(2) the second "knowing." It is, at the least, unnecessary and perhaps absurd.[2] If subsection (a)(2) ought not be read in this way, it is not clear why we must read subsection (a)(1) in this way either.

---

[2]The majority attempts to minimize the significance of this absurdity by observing that the entire phrase "of another person or a false identification document" could be removed from § 1028A(a)(2). Maj. Op. 8858. While this may be true in isolation, as the majority points out, the phrase was probably included to distinguish this provision from the preceding one, which applies only to the use of another's identification, and not a "false identification." Maj. Op. 8858 n.5. The fact that Congress included one superfluous phrase for an obvious reason, does not mean that we should read a second one into the statute as well.

The majority opinion in *Villanueva-Sotelo*, addressed § 1028A(a)(2), but I do not find its discussion persuasive. First, the majority noted that "[t]he government concedes that section 1028A(a)(2)'s knowledge requirement must apply to the whole phrase 'false identification document.' " 515 F.3d at 1239. The majority then reasoned that "if 'knowingly transfers, possesses, or uses' acts upon the direct object and its modifiers in subsection (a)(2), we think it quite reasonable to conclude that it could do the same in subsection (a)(1)." *Id.* at 1240. The majority's conclusion may follow from its premises, but we have no indication that the government has "concede[d]" any such thing about § 1028A(a)(2). *Cf. United States v. Estrada-Sanchez*, ___ F. Supp. 2d ___, ___, 2008 WL 2315733, at *5 n.7 (D. Me. 2008).

The *Villanueva-Sotelo* majority returned to § 1028A(a)(2) later in its opinion, but again I do not find its reasoning persuasive. It observed that subsection (a)(2) adds a phrase—"or a false identification document"—not found in subsection (a)(1). 515 F.3d at 1248. It then found that "[h]ad Congress parroted subsection (a)(2)'s 'false identification document' language in subsection (a)(1), Villanueva-Sotelo's guilt would be plain. . . . We see no reason to read subsection (a)(2)'s language into subsection (a)(1) when Congress clearly could have placed it there itself." *Id.* at 1249.

With all due respect to our colleagues on the D.C. Circuit, they have it exactly backwards. Of course, there is no reason to read the phrase "or a false identification document" found in (a)(2) into (a)(1); that would be an obvious amendment of the statute. But the majority has seemingly uncovered the logical conundrum I identified above; it simply took the wrong inference from it. My point is not that we should read language that Congress added in subsection (a)(2) into (a)(1). That is, I am not suggesting that we need to add to the actus reus of §1028A(a)(1) that an individual has violated that section if the means of identification he knowingly uses is in fact a false document. Rather, my point is that we should *not* read

mens rea language that is inconsistent with subsection (a)(2) into an identical and contemporaneously-adopted subsection (a)(1). That is precisely what the D.C. Circuit and the majority have done: They have read into § 1028A(a)(1) a second "knowing" requirement, and such a requirement cannot peaceably be read into the nearly identical subsequent subsection.

II

I also wish to explain briefly why the statute at issue in this case is distinguishable from the statutes the Supreme Court parsed in *Liparota v. United States*, 471 U.S. 419 (1985), and *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994). In *Liparota*, the statute punished "whoever knowingly uses, transfers, acquires, alters, or posseses coupons or authorization cards in any manner not authorized by [the statute] or the regulations." 471 U.S. at 420 n.1 (quoting 7 U.S.C. § 2024(b)(1)). The petitioner in the case argued that adopting an interpretation of the statute that did not read the mens rea requirement as applying to the second part of the sentence, would dispense with "the only morally blameworthy element in the definition of the crime." *Id*. at 423. The Supreme Court agreed and explained that its interpretation was in part driven by the fact that "to interpret the statute otherwise would be to criminalize a broad range of apparently innocent conduct." *Id*. at 426. The Court noted that a strict reading of the "knowledge" requirement would mean that an individual who was mistakenly sent food stamps through the mail, or an individual who purchased food from a store that charged higher than normal prices to food stamp program participants would be in violation of the statute. *Id*. at 426-27.

Similarly, in *X-Citement Video*, the statute penalized "[a]ny person who . . . knowingly transports . . . any visual depiction, if . . . the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct." 513 U.S. at 68 (quoting 18 U.S.C. § 2252(a)(1)(A)). The Court held

that in that case the "knowingly" mens rea requirement extended to "the use of a minor" and therefore required knowledge of the age of the performers. *Id.* at 78. Underlying the Supreme Court's reasoning is a concern that to read the statute otherwise would capture "actors who had no idea that they were even dealing with sexually explicit material." *Id.* at 69. Thus, motivating both Supreme Court cases is an assumption that Congress did not intend to criminalize conduct that we regard as morally innocent.

We have no similar concern with respect to the statute at issue in this case. This case does not address whether §1028A(a)(1) requires knowledge that the identification is being transferred, possessed or used *without lawful authority*. Were that portion of the statute contested in this case, then the Supreme Court's precedents would directly apply because the criminalization of morally innocent conduct would be at stake. Here, reading § 1028A(a)(1) without requiring knowledge that the identification belongs to another person would only criminalize the following scenarios: 1) a person knowingly uses without lawful authority a means of identification of another person knowing that it belongs to another person; 2) a person knowingly uses without lawful authority a means of identification believing it to be a false identification document, whereas in actuality it belongs to another person; and, 3) a person knowingly uses without lawful authority a means of identification not knowing or caring whether it is a false identification document or a means of identification of another person, and in actuality it belongs to another person. None of those scenarios involve criminalizing innocent behavior, and therefore we need not assume that Congress could not have intended to criminalize such conduct.

## III

These are difficult statutes to parse. I would hold, consistent with the Fourth, Eighth, and Eleventh Circuits, that a person violates 18 U.S.C. § 1028A(a)(1) if he knowingly

transfers, possesses or uses, without lawful authority, a means of identification that belongs to another person, even if the government cannot prove that he had actual knowledge that the identification belonged to another person. Accordingly, I would affirm the judgment of the district court.

I respectfully dissent.