# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 10, 2021    Decided December 28, 2021
Reissued March 9, 2022

No. 20-1324

KERYN NEWMAN AND ALISON HAVERTY,
PETITIONERS

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

POTOMAC-APPALACHIAN TRANSMISSION HIGHLINE, LLC, ON
BEHALF OF ITS OPERATING COMPANIES, PATH WEST VIRGINIA
TRANSMISSION COMPANY, LLC ("PATH-WV") AND PATH
ALLEGHENY TRANSMISSION COMPANY, LLC ("PATH-AYE"),
INTERVENOR

———

On Petition for Review of Orders
of the Federal Energy Regulatory Commission

———

*Keryn Newman* and *Alison Haverty,* pro se, argued the causes and filed the briefs for petitioners.

*Jared B. Fish*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With him on the brief were *Matthew R. Christiansen*, General Counsel, and *Robert H. Solomon*, Solicitor. *Beth G. Pacella,* Deputy Solicitor, entered an appearance.

*David M. Gossett* argued the cause for intervenor Potomac-Appalachian Transmission Highline, LLC in support of respondent. On the brief were *P. Nikhil Rao*, *Stacey Burbure*, *Richard P. Sparling*, and *Bradley Miliauskas*. *Morgan Parke* entered an appearance.

Before: SRINIVASAN, *Chief Judge*, PILLARD, *Circuit Judge*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

PILLARD, *Circuit Judge*: Proceeding *pro se*, Keryn Newman and Alison Haverty (Petitioners) petition for review of a pair of Federal Energy Regulatory Commission (FERC or Commission) orders that raised their electricity rates. The FERC orders validated accounting by Potomac-Appalachian Transmission Highline, LLC (PATH) under its formula rate, allowing it to pass through to ratepayers more than $6 million PATH spent for public relations and advocacy activities. Those activities related to PATH's pursuit of Certificates of Public Convenience and Necessity (Certificates) to build its proposed electric power transmission line. Using FERC's Uniform System of Accounts, PATH booked those expenditures in accounts designated for "Outside Services Employed" and "General Advertising Expenses." Petitioners argue that the expenditures instead belong in an account designated for "Expenditures for Certain Civic, Political and Related Activities," which would exclude them from the formula rate. PATH asserts that account includes expenditures made for the purpose of directly influencing the decisions of public officials, but not the disputed expenditures, which were for indirect influence. Because we conclude that "Expenditures for Certain Civic, Political and Related

Activities" include expenditures made for the purpose of indirect as well as direct influence, we grant the petition.

## I.  Background

### A.  Regulatory Framework

The Federal Power Act's section 205 requires that interstate electric utilities file and receive FERC's approval for tariffs establishing the rates they charge customers each year. 16 U.S.C. § 824d.  Since the 1970s, FERC has allowed those tariffs to be filed as "formula rates." *See Pub. Utils. Comm'n of Cal. v. FERC*, 254 F.3d 250, 254 (D.C. Cir. 2001).  Rather than stating specific prices, a formula rate "specifies the cost components that form the basis of the rates." *Id.*  In other words, a formula rate describes which categories of the utility's expenditures will be folded into retail customers' prices.  Once FERC approves a formula rate as the tariff, a utility is then excused from filing new tariffs every year. *See id.* at 254.  It instead need only file an annual report of its categorized expenditures, which in turn act as the inputs to the approved formula that generates prices customers pay. *Id*.  FERC's Uniform System of Accounts provides ready-made "accounts," including descriptions of what belongs in them, for categorization purposes. *See* 18 C.F.R. pt. 101.  A formula rate built on the Uniform System identifies by account which expenditures are passed on to ratepayers, and which fall outside the formula rate so must be absorbed by the utility itself.

This case concerns such a formula rate, filed by PATH and approved by FERC.  PATH's formula adopted FERC's Uniform System of Accounts to identify expenditure categories incorporated into or excluded from customer rates.  As relevant here, PATH's formula rate passes through to customers all costs booked to Account 923 ("Outside Services Employed") and some costs booked to Account 930.1 ("General

Advertising Expenses"). By contrast, PATH's formula rate does not pass through to customers expenditures booked to Account 426.4 ("Expenditures for Certain Civic, Political and Related Activities").

## B. PATH's Expenditures

In 2007, the regional transmission organization PJM determined that a new electricity transmission line was needed to address a reliability shortfall on its electric grid. Two of PJM's member utilities formed PATH to build the new line— which would traverse West Virginia, Virginia, and Maryland— and to secure the necessary Certificates of Public Convenience and Necessity for the line's construction. Those Certificates could be provided only by the utility commissions of each of the three states that the transmission line would cross.

From 2009 through 2011, PATH spent more than $6 million on various activities to support its applications for Certificates. Through hired public relations contractors, PATH organized "reliable power coalitions" that would recruit individuals—often prominent business and labor leaders—to testify before the state utility commissions in support of PATH's certificate applications. PATH's contractors also polled public opinion of the project, ran promotional advertisements, and sent lobbyists to persuade state officials that the Certificates should be granted.

There is little question that PATH made these disputed expenditures to influence the decisions of public officials. The record is full of statements to that effect. The internal communications of PATH's public relations contractors, for example, declared that "[w]e have but one singular goal—to help get PATH approved," a goal that would be achieved by "generating the political cover that commissioners/legislators need to 'do the right thing.'" J.A. 66; *see also* J.A. 142-44

(contractor agreement with public relations firm). And the advertisements PATH's agents ran were persuasive rather than merely informational, focusing on arguments in support of approval and construction of PATH's proposed transmission line. *See, e.g.*, J.A. 115, 117-18, 121.

In its 2010, 2011, and 2012 annual filings, PATH categorized most of those expenditures into Accounts 923 ("Outside Services Employed") and 930.1 ("General Advertising Expenses"). Per PATH's formula rate, the costs had been passed on to customers—including petitioners—in the form of higher rates during 2009, 2010, and 2011. But in 2012, based on updated analyses that there was no longer a projected reliability shortfall, PJM cancelled the PATH project. PATH therefore withdrew its applications for Certificates, ended public relations and advocacy expenditures for the project, and never constructed the transmission line.

To incentivize investment in energy transmission infrastructure, FERC rules generally authorize public utilities to recover qualifying investments if an approved project must be abandoned for reasons beyond the utility's control. *See* 18 C.F.R. § 35.35(d)(1)(vi). Pursuant to section 205 of the Federal Power Act, PATH accordingly made a filing with FERC to recover "abandonment costs"—including its eligible expenditures and a proposed return on equity—totaling over $121 million. The money at issue here is a subset of the abandonment-costs recovery PATH sought.

## C. Procedural History

The history of this case spans more than a decade. Petitioners were among the customers charged higher rates because of PATH's accounting, and they challenged PATH's 2010, 2011, and 2012 annual filings. Petitioners asserted that they were overcharged because the over $6 million in public

relations and advocacy expenditures belonged in Account 426.4 ("Expenditures for Certain Civic, Political and Related Activities"), which is not incorporated in PATH's formula rate and therefore not recoverable from ratepayers, rather than Accounts 923 and 930.1, to which PATH had assigned them.

Petitioners initially succeeded—twice—on those claims. In 2015, an ALJ consolidated petitioners' three years of challenges with other related claims and ruled in their favor on the accounting determinations. Relying on the text of FERC's Uniform System of Accounts and FERC precedent, the ALJ reasoned "that the 'intended use' and 'reason behind' the expenditure[s]" dictates their appropriate account, and that "the ultimate aim" of PATH's public relations and advocacy expenditures "was to influence the decisions of public officials in an effort to obtain [Certificates] and other licensing approvals." *Potomac-Appalachian Transmission Highline, LLC*, 152 FERC ¶ 63,025, at 8-9 (2015) ("Initial Decision"), J.A. 315-16 (quoting *ISO New England Inc.*, 117 FERC ¶ 61,070, at 42 (2006)). Thus, the ALJ decided that "[a]ctivities of this nature must be recorded in Account 426.4," not 923 or 930.1. *Id*. at 9, J.A. 316.

In 2017, after the parties filed briefs on exceptions to the ALJ's ruling, FERC affirmed the ALJ's decision on the accounting determinations. In Opinion 554, the Commission held that Account 426.4 is "focused on expenses related to public activity, either influencing public opinion with respect to a variety of public activities or directly influencing public officials." *Potomac-Appalachian Transmission Highline, LLC*, 158 FERC ¶ 61,050, at 12 (2017) ("Opinion 554"), J.A. 352. Following the recommendation of its Trial Staff, the Commission specifically observed that Account 426.4's list of government actions potentially affected by efforts to influence public opinion "is not all-inclusive, but rather provides

illustrative examples." *Id.*, J.A. 352. The Commission also relied on its own precedent to conclude that Account 426.4 broadly covers "any costs 'incurred to influence the opinion of the public during the' period when public officials were deliberating on whether to approve a new project." *Id.* at 13 (quoting *Alaskan Nw. Nat. Gas Transp. Co.*, 19 FERC ¶ 61,218, at 12 (1982)), J.A. 353. "By [PATH's] own admission," the Commission reasoned, that is what the activities funded by PATH's disputed expenditures were attempting to do. *Id.*, J.A. 353. FERC then ordered PATH to refund those expenditures to ratepayers. *Id.* at 19, J.A. 363-64.

PATH immediately requested rehearing, based in part on its contention that all its disputed expenditures—except those for direct lobbying services—had been correctly categorized in its original accounting. PATH Request for Rehearing at 5-6, J.A. 384-85. In the meantime, PATH also submitted filings to FERC calculating and recording its refunds to ratepayers pursuant to Opinion 554. When petitioners challenged those updated filings as erroneous or incomplete, the Commission again agreed and ordered further corrections or clarifications in PATH's accounting consistent with Opinion 554. *Potomac-Appalachian Transmission Highline, LLC*, 166 FERC ¶ 61,035, at 7-8 (2019), J.A. 445-57. PATH completed the refunds as ordered.

In January 2020, FERC reversed course. Acting on PATH's three-year-old request for reconsideration of Opinion 554, FERC issued Opinion 554-A, holding that none of the disputed expenditures belonged in Account 426.4 after all. *Potomac-Appalachian Transmission Highline, LLC*, 170 FERC ¶ 61,050 (2020) ("Opinion 554-A"), J.A. 467. In Opinion 554-A, FERC "continue[d] to affirm" the principle that the purpose of an expenditure "dictates its accounting assignment." *Id.* at 25 (internal quotation marks omitted), J.A.

506. However, the Commission concluded that the "matters" on which PATH incurred costs to influence public opinion were "not contemplated" by Account 426.4. *Id.*, J.A. 506. To that end, it reasoned that neither of Account 426.4's two inclusion clauses encompassed the expenditures. As to the first clause, the expenditures PATH made to seek "public convenience and necessity determination[s]" did not "fall within the ambit of referenda, legislation, ordinance, the grant of franchise and the like" because they were "general promotional efforts on behalf of an" already "[regional transmission organization (RTO)]-approved project." *Id.* at 26, J.A. 507-08. As to the second clause, FERC saw the expenditures as more like an "operating expense" intended only "to indirectly influence public officials." *Id.* at 25-26, J.A. 505-08. The Commission thus held the expenses belonged in accounts other than 426.4. *Id.* at 27, J.A. 508.

Petitioners, in turn, sought rehearing. The Commission promptly issued Opinion 554-B denying petitioners' request and augmenting the reasoning in Opinion 554-A. *Potomac-Appalachian Transmission Highline, LLC*, 172 FERC ¶ 61,048 (2020) ("Opinion 554-B"), J.A. 576. In Opinion 554-B, FERC revisited the analysis of Account 426.4's individual clauses. As to the first clause, FERC distinguished "a franchise application—in which the utility competes for a potentially lucrative status for itself—from an application in service of an RTO-approved project—in which the utility represents not only its own interests but those of the RTO as a whole." *Id.* at 6, J.A. 584. And FERC similarly treated "the fact that the PATH Project ha[d] been approved by an RTO" as "a determinative factor" for excluding the expenditures from the second clause because that approval "motivate[d] PATH's actions." *Id.*, J.A. 585. Thus, Opinion 554-B reaffirmed Opinion 554-A: The disputed expenditures were appropriately

placed in Accounts 923 and 930.1 rather than Account 426.4. *Id.* at 5, 12, J.A. 583, 593.

Petitioners timely sought review of Opinions 554-A and 554-B. We granted PATH's motion for leave to intervene in support of FERC.

### D. Standard of Review

Because Opinions 554-A and 554-B involve FERC's interpretation of its own regulations—the Uniform System of Accounts—we first consider whether to defer to that interpretation. If deference applies, then FERC's interpretation "becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2411 (2019) (internal quotations omitted). For an interpretation to receive deference, a rule must be "genuinely ambiguous" after a court has "exhaust[ed] all the traditional tools of construction." *Id.* at 2415 (internal quotation omitted).

For the reasons explained below, after examining the "text, structure, history, and purpose of [the] regulation" here, *id.* (internal quotation omitted), we conclude that FERC's interpretation of at least one clause of Account 426.4 is "plainly . . . inconsistent with the regulation." *Id.* (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)). Pursuant to that clause, correctly understood, the disputed expenses belong in Account 426.4. As a result, no issue of deference arises. To so depart from "the regulation's obvious meaning" would "permit the [Commission], under the guise of interpreting a regulation, to create *de facto* a new regulation." *Christensen v. Harris Cnty.*, 529 U.S. 576, 588 (2000); *accord Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 211 (2011) (internal quotation omitted). And because the disputed expenses belong in Account 426.4 under at least one of its clauses, we need not interpret the other. We grant the petition,

vacate the challenged portions of FERC's orders, and remand for FERC to direct the proper accounting, recoverability, and ratemaking remedy regarding the more than $6 million PATH spent for public relations and advocacy activities.

## II. Discussion

Petitioners challenge FERC's reconsideration orders approving PATH's accounting determinations. The dispositive question is whether PATH's disputed expenditures fit within Account 426.4. FERC clearly erred in reading Account 426.4's second clause as implicitly limited to expenditures for the purpose of directly influencing the decisions of public officials. Because the disputed expenditures here were all admittedly made for the purpose of influencing state officials' certification decisions, they should have been booked into Account 426.4. FERC thus erred in allowing PATH to treat those expenditures as residual, so to categorize them in residual Accounts 923 and 930.1, and to include them in PATH's formula rate during the challenged years.

## A.  Account 426.4 Includes the Challenged Expenditures

Account 426.4 is called "Expenditures for Certain Civic, Political and Related Activities."  18 C.F.R. pt. 101, Account 426.4.  The first and second clauses of the Account description identify two categories of included expenditures, and the last clause excludes a third category, as follows:

> This account shall include expenditures **[1]** for the purpose of influencing public opinion with respect to the election or appointment of public officials, referenda, legislation, or ordinances (either with respect to the possible adoption of new referenda, legislation or ordinances or repeal or modification of existing referenda, legislation or ordinances) or

approval, modification, or revocation of franchises; or **[2]** for the purpose of influencing the decisions of public officials, but **[3]** shall not include such expenditures which are directly related to appearances before regulatory or other governmental bodies in connection with the reporting utility's existing or proposed operations.

*Id*. (bracketed and bolded numbers added). For ease of reference, we refer to the first inclusion clause as the "Public Opinion Clause" and to the second as the "Official Decisions Clause."

Opinions 554-A and 554-B held that PATH's disputed expenditures fit neither of the two inclusion clauses. Before us, the Commission insists that the Public Opinion Clause is inapposite because PATH's activities "influencing public opinion" in favor of state officials granting certification did not count as influence with respect to "the election or appointment of public officials, referenda, legislation, or ordinances" or the "approval, modification, or revocation of franchises." Resp. Br. 22-29; *see also* Int. Br. 11-16. FERC maintains that the Official Decisions Clause does not apply because, to reasonably bound its scope and prevent it from subsuming the Public Opinion Clause, it should be read to cover only *direct* forms of influence over the decisions of public officials. Resp. Br. 30-37; *see also* Int. Br. 16-20. No party argues that the third clause excludes the disputed expenditures.

Petitioners respond that FERC did not intend to create an exhaustive list of all items that belong in the Account and that, in any event, the term "franchise" includes the Certificates that PATH sought here. Pet. Br. 26-29; Reply Br. 20. And they point out that the Official Decisions Clause broadly covers all expenditures "for the purpose of influencing the decisions of

public officials," presumably including officials' decisions to grant certificates of public convenience and necessity. Pet. Br. 32-36. The Official Decisions Clause is not, in petitioners' view, limited to direct forms of influence.

We hold that the Official Decisions Clause includes expenditures for the purpose of indirectly as well as directly influencing the decisions of public officials. Virtually "all the traditional tools of construction," *Kisor*, 139 S. Ct. at 2415 (internal quotation omitted), bear out the conclusion that purpose, not directness, is the touchstone of that Clause. Account 426.4's plain language communicates that meaning. Regulatory context and history, together with FERC precedent, all confirm it. Because indirect influence of state officials responsible for certification decisions was the undeniable purpose of the expenditures at issue here, they should have been assigned to Account 426.4. And because the Official Decisions Clause includes the disputed expenditures, we need not decide whether the Public Opinion Clause does, too. We therefore express no opinion as to the scope of that latter clause.

### 1. Regulatory Text

The Official Decisions Clause's plain language is clear. To state the obvious, the phrase "expenditures . . . for the purpose of influencing the decisions of public officials," 18 C.F.R. pt. 101, Account 426, is not by its terms confined to expenditures made to directly influence the officials' decisions. There is no ambiguity. The word "directly" simply does not appear in the text.

The Commission gave two reasons to imply the word "directly" into the text of the Official Decisions Clause. Both are unpersuasive. First, FERC claims that "directly" must be implied to "bound[] [the Clause's] reach in a reasonable way." Resp. Br. 32. The Commission seeks support in *FERC v.*

*Electric Power Supply Association*, 577 U.S. 260 (2016). The Supreme Court there read the Federal Power Act's grant of federal regulatory jurisdiction over "any rule, regulation, practice, or contract *affecting*" wholesale rates of electric utilities to be necessarily limited to direct regulation of the wholesale power market. 16 U.S.C. § 824e(a) (emphasis added); *see* 577 U.S. at 264. The Court observed that, "[t]aken for all it is worth," the word "affecting" could extend FERC's power to "the whole economy," and accordingly implied the word "directly" into the statutory text. 577 U.S. at 277-78. FERC contends that here, too, "a non-hyperliteral reading is needed to prevent the [regulation] from assuming near-infinite breadth." Resp. Br. 32 (quoting 577 U.S. at 278). Not so. Unlike the provision at issue in *Electric Power Supply Association*, the text of the Official Decisions Clause already contains a sharp limit: "for the purpose of." Purpose, not directness, is the definitional boundary. That phrase circumscribes the Clause's scope and obviates any justification for implying a nontextual limit.

Viewing Account 426.4 as a whole further undermines FERC's position. The Account's third, exclusionary clause uses the term "directly" to limit excluded activities to those "directly related to appearances before regulatory or other governmental bodies." 18 C.F.R. pt. 101, Account 426.4. Where drafters use a term in one provision but not another, "it is generally presumed" that the drafter acted "intentionally and purposely in the disparate inclusion or exclusion." *United States v. Villanueva-Sotelo*, 515 F.3d 1234, 1248 (D.C. Cir. 2008) (quoting *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452 (2002)). Account 426.4's drafters could have used "directly" in the Official Decisions Clause as they did in the third, exclusionary clause, but they did not. We do not second-guess that decision absent stronger grounds than FERC has offered here.

Second, FERC claims we must imply "directly" into the Official Decisions Clause lest it subsume and make surplusage all of the Public Opinion Clause. FERC contends an implicit "direct" limitation is needed to "imbu[e] the first and second clauses with independent meaning." Resp. Br. 35. "If an expense can indirectly 'influenc[e] the decisions of public officials' by targeting public opinion, and thus qualify under the second clause," FERC argues, "then the specified list of items in the first clause"—regarding influencing public opinion—"falls out of the Account." *Id.*

But the surplusage point fails. In the first place, several items of the Public Opinion Clause would not also be the targets of expenditures seeking to indirectly influence public officials' decisions by swaying public opinion. "[T]he election . . . of public officials," along with the "adoption of new referenda" and the "repeal or modification of existing referenda" are direct popular decisions, not "the decisions of public officials." 18 C.F.R. pt. 101, Account 426.4. Expenditures for the purpose of achieving those results would not fall into the Official Decisions Clause, even without a directness limitation. Reading the Official Decisions Clause as written therefore does not render the Public Opinion Clause superfluous because it covers activities that the Official Decisions Clause does not.

Reading the Official Decisions Clause as written also ensures that it covers activities that the Public Opinion Clause does not. A utility has many options for indirectly influencing the decisions of public officials, including some used by PATH here, that do not involve influencing public opinion. For example, a utility could recruit a business leader to speak at a state utility commission hearing in support of its application for a Certificate. According to PATH and FERC, that is not direct influence so not within the Official Decisions Clause as FERC

construes it because the utility itself would not have "direct contact with public officials." Opinion 554-B, at 13, J.A. 588. However, the cost of that recruitment would not fall within the Public Opinion Clause either, because it is not an effort to influence public opinion, but to convince the state officials on the commission to grant the Certificate. Reading the Official Decisions Clause to capture expenditures for that and similar activities does not render the Public Opinion Clause superfluous. This underscores that each clause retains independent meaning and effect even without inserting the word "directly" into the Official Decisions Clause.

In all events, "our hesitancy to construe statutes to render language superfluous does not require us to avoid surplusage at all costs. It is appropriate to tolerate a degree of surplusage rather than adopt a textually dubious construction that threatens to render the entire provision a nullity." *United States v. Atl. Rsch. Corp.*, 551 U.S. 128, 137 (2007). What FERC asks us to do here—insert a word into a regulation that the drafters left out—is "textually dubious." And while the Commission's interpretation of Account 426.4 would not render the entire provision a nullity, it would severely truncate its explicit scope. The text of the Account does not invite us to implant entirely extra-textual limiting language.

The text of Account 426.4's Official Decisions Clause is reason enough to reject the Commission's interpretation. But other tools of interpretation confirm that the simple answer here is the right one: The Clause is not confined to expenditures for "directly" influencing the decisions of public officials.

### 2. Whole Regulation

The Commission's insistence that Account 426.4's Official Decisions Clause covers only "direct" forms of

influence is also in tension with the rest of FERC's Uniform System of Accounts. Just two other portions of the regulation refer to Account 426.4. One is Account 930.1's Note B, which redirects "expenses for advertising activities, which are *designed to solicit* public support or the support of public officials in matters of a political nature," to Account 426.4. 18 C.F.R. pt. 101, Account 930.1 Note B (emphasis added). Far from implying a directness requirement for the influence of public officials, Note B reinforces that purpose is the relevant limiting factor. Note B applies the purpose requirement with equal measure to influencing the public and influencing public officials. That drives home how the Public Opinion and Official Decisions Clauses are governed by the same limiting factor—purpose—not the piecemeal directness limitation that FERC engrafted. The only other reference to Account 426.4, in Account 909's Note A, likewise does not give any indication of a directness requirement, merely describing Account 426.4 as covering "expenses of a . . . political nature." *Id.* at Account 909 Note A.

### 3. Regulatory History

The regulatory history of Account 426.4 further reinforces its text. Most relevant is FERC's Order 276, which created Account 426.4 in 1963 and describes the Account's purpose, drafting, and scope. Order No. 276, 30 F.P.C. 1539 (1963), J.A. 286. Order 276 corroborates that the Commission did not implicitly limit the Official Decisions Clause to payments made for the purpose of directly influencing public officials.

Order 276's reasoning supports our conclusion that Account 426.4 includes expenditures for activities attempting to indirectly influence the decisions of public officials. Noting that it "would be impractical" to create "an exhaustive list" of what the Account covers, the Order provides a list of examples

to "illustrate[] the type of expenditures" that do or do not belong in 426.4. *Id.* at 542, J.A. 289. As might be expected, the examples exclude from Account 426.4 costs of general promotional advertising and related activities not intended to influence governmental decisions or policy—such as "promotional and 'good will' advertising." *Id.*, J.A. 290. They include expenditures made for the purpose of influencing the decisions of public officials, whether directly or indirectly— like "[p]ayments for lobbying *or other fees to persons or organizations including law firms, service companies or other affiliated interests*, for influencing the passage or defeat of pending legislative proposals or *influencing official decisions of public officers*." *Id.* (emphasis added), J.A. 290. That identification of lobbyists separately from agents of less direct influence, like law firms and other service companies (such as public relations firms), substantiates the Official Decisions Clause's inclusion of indirect as well as direct forms of influence. Other examples are to similar effect. *Id.*, J.A. 290-91.

Both PATH and the Commission point us to a portion of Order 276 describing how Account 426.4's language evolved during the drafting process, but it does not support their position. According to the Order, a prior draft of the Account included expenditures "having any direct or indirect relationship to political matters, including the influencing of public opinion with respect to public policy," but that phrase was deleted as "ambiguous and indefinite." *Id.* at 1540, J.A. 287-88. PATH and FERC see that deletion as "confirm[ing] that costs of indirect efforts to influence public officials . . . should not be recorded in Account 426.4." Int. Br. 24; *see* Resp. Br. 34. We disagree. For one thing, the deletion did not affect the Official Decisions Clause, which was already present in the prior draft. For another, the deletion is double-edged: It removed the word "direct" as well as the word "indirect" from

the Account's description. We cannot, then, treat only the deletion of "indirect" as significant. Nothing in the drafting history counsels against taking the Official Decisions Clause on its own terms. To the contrary, the Commission's deletion of directness and retention of purpose as the core limiting principle reinforces our reading of Account 426.4.

### 4. FERC Precedent

On balance, FERC precedent also favors reading the Official Decisions Clause to include expenditures aimed at indirect as well as direct forms of influence of public officials. The Commission has repeatedly affirmed that purpose to influence is the key feature of expenditures that belong in Account 426.4. It has never before interposed a directness requirement. In at least two cases, FERC has ordered costs like those disputed here to be sorted into Account 426.4. The only case allowing recovery of similar costs involved recovery based on a stated rate and sought by a regional transmission organization—neither of which is present here.

FERC has consistently held that indirect expenditures made for the purpose of influencing the decisions of public officials belong in Account 426.4. In *Northwest Alaskan Pipeline Co. & Northern Border Pipeline Co.*, 15 FERC ¶ 61,116 (1981) (*Northern Border*), FERC reviewed an audit report of expenditures for "preliminary activities related to the construction of a natural gas transmission line." *Id.* at 3. The activities included paying firms "to print a booklet entitled 'What Happens When a Pipeline Goes Through'" and to "assemble and distribute the 'Northern Border Pipeline Press Kits.'" *Id.* at 4. Those materials were "intended and used to influence public opinion and the opinion of public officials during the selection process of the project," so FERC

concluded that the "Uniform System of Accounts requires that expenditures of this nature be recorded in Account 426.4." *Id.*

FERC claims that because *Northern Border* "failed to explain *how* those materials 'influenc[ed] . . . the opinion of public officials'—i.e., whether that influence was direct or indirect . . . , it is uncertain whether PATH is similarly situated." Resp. Br. 50 (emphasis in original). But that omission seems to cut against FERC's reading of Account 426.4, which depends on the distinction it says *Northern Border* did not make. PATH takes a different tack, stating that "[i]t is unreasonable to compare" *Northern Border* with this case because there, the influence happened "during the selection process" rather than the Certificate application process following a regional transmission organization's approval. Int. Br. 26-27. But both processes require decisions by public officials—the central focus of the Official Decisions Clause—one determining which of several proposals to adopt and the other determining whether to greenlight a single proposed project. PATH's distinction thus finds no support in *Northern Border*.

FERC's reliance on *Alaskan Northwest Natural Gas Transportation Co.*, 19 FERC ¶ 61,218 (1982), fares no better. There, FERC reviewed a company's report of its expenditures "to various public relations firms for preparing and disseminating during the selection process information about" its proposed natural gas pipeline and potential alternatives. *Id.* at 11. In holding that those expenditures belonged in Account 426.4, the Commission explained:

> Expenditures incurred to influence the opinion of the public during the selection process have little or no benefit to the ratepayers, and therefore must be borne by stockholders. Just and reasonable expenditures

incurred to keep the general public informed on the progress of the project and other public relations activities are proper expenses to be borne by ratepayers after operations commence.

*Id.* at 12. Because the expenditures in *Alaskan Northwest Natural Gas* "were intended and used to influence public opinion and the opinions of public officials during the selection process," they were "in the nature of lobbying" and should not have been passed on to ratepayers. *Id.* at 11-12. FERC specifically observed that "there is no real distinction between what has been characterized as influencing public opinion and public relations activities. The distinction lies in the intended use and reason behind the payments." *Id.* at 12.

PATH and the Commission argue that *Alaskan Northwest Natural Gas* included the disputed expenditures in Account 426.4 only because the proposal at issue required legislative approval, thus bringing it within the purview of the Public Opinion Clause's reference to influence regarding "legislation." *See* Resp. Br. 49; Int. Br. 25-26. FERC never identified that point as relevant in its decision. To the contrary, it expressly referred to official decisions as well as public opinion and emphasized that the core distinction between Account 426.4 and other categories is the purpose of the expenditures. 19 FERC ¶ 61,218, at 12. The Commission's understanding of Account 426.4 as expressed in *Alaskan Northwest Natural Gas* therefore supports the Official Decisions Clause's inclusion of expenditures for influence, whether direct or indirect.

For its part, FERC relies on its decision in *ISO New England Inc.*, 117 FERC ¶ 61,070 (2006), and our affirmance of that decision in *Braintree Electric Light Department v. FERC*, 550 F.3d 6 (D.C. Cir. 2008). That case concerned the

recoverability of ISO New England's "corporate communications" and "external affairs" expenditures. ISO New England, an independent regional transmission organization, had used the disputed funds to "monitor hearings and proposed legislation" and to "communicate[] with state and federal legislators regarding specific legislation or ideas on which there was pending legislation" related to ISO-New England's operations. 117 FERC ¶ 61,070, at 13. Despite plausible protests that the expenses should have been assigned to Account 426.4, the Commission allowed ISO New England to recover them because the expenditures:

> (1) represented an educational, communicative function of ISO-NE essential to its mission of efficiently and reliably operating the New England markets; (2) supported specific legislation that ISO-NE determined was in the collective best interests of its customers/stakeholders and from which it could not reap any financial or other benefit; and (3) did not include the types of activities that would not be recoverable, such as participation in Political Action Committees, candidate fundraising, entertainment expenses (*e.g.*, meals, sporting events, junkets) and other activities not at issue here that do not directly relate to ISO-NE's operations.

*Id.* We upheld FERC's determination, affirming that expenditures that might well belong in Account 426.4 would not by such assignment be rendered unrecoverable from ratepayers, so long as the conditions identified by the Commission were met. *Braintree*, 550 F.3d at 11-12.

FERC's analogy to *ISO New England* and *Braintree* has a fatal flaw: ISO New England used a markedly distinct ratemaking process from the one at issue here. As described

above, PATH used a "formula rate" in which rates are variable, depending on how expenditures are sorted into pre-approved accounts. By contrast, ISO New England "annually files with the Commission *stated rates*." *ISO New England Inc.*, 134 FERC ¶ 61182, at 1 (2011) (emphasis added). Unlike a formula rate, a "stated rate" remains the same each year, not changing until a new one is filed and approved by FERC. Crucially, when a stated rate is used, the recoverability of expenditures does not depend on the identity of the account to which the expenditures are assigned. Accounts may be used for convenience and organization, but lack the legal significance they have in formula rates. Instead, the Commission examines expenditures on a case-by-case basis to determine whether they can be recovered from ratepayers as "just and reasonable" costs of serving the public under section 205 of the Federal Power Act. *Braintree*, 550 F.3d at 9 (citing 16 U.S.C. § 824d(a)).

That was the issue in *ISO New England*: whether, in setting its stated rate, ISO New England could recover certain kinds of expenditures even if they belonged in Account 426.4. *Braintree*, 550 F.3d at 11. Indeed, no party there argued that the disputed expenditures belonged anywhere else. Relying on that case here as FERC suggests would prove too much, potentially allowing for recovery under a formula rate like PATH's of even direct lobbying expenditures—a type of expenditure that no party disputes belongs in Account 426.4. Neither FERC nor PATH argues that such expenditures are recoverable here. *ISO New England* and *Braintree* thus do not control our decision.

### 5. Regulatory Purpose

The purposes of Account 426.4 underscore the logic of the Official Decisions Clause's applicability to expenditures for

indirect as well as direct forms of influencing public officials. As described above, FERC itself has explained that "[e]xpenditures incurred to influence the opinion of the public during the selection process have little or no benefit to the ratepayers, and therefore must be borne by stockholders" instead. *Alaskan Nw. Nat. Gas Transp. Co.*, 19 FERC ¶ 61218, at 12. In establishing Account 426.4, Order 276 distinguished between expenditures appropriate for that Account and expenditures for "above-the-line operating expense[s]" that are part of the ordinary costs of maintaining service for current ratepayers. 30 F.P.C. at 1540, J.A. 287. Injecting a nontextual directness requirement into the Official Decisions Clause would hamper those objectives. The Commission's arguments in this case illustrate how: A utility's "public relations contractors" could simply recruit "individual[s]" to influence public officials on their behalf, and because the utility's payments to such contractors would be "one step removed" from the influence, "the disputed expenses" could go to other accounts and be recovered under the formula rate. Resp. Br. 42-43. That would obscure the purpose of the expenditures and shift to ratepayers the costs of the utility's lobbying—costs with "little or no benefit" to them that exceed the ordinary operating costs of power transmission services. The risk of such end-runs around the core function of Account 426.4 further confirms our straightforward reading of the text of the Official Decisions Clause.

\* \* \*

The language of Account 426.4's Official Decisions Clause clearly encompasses the disputed expenditures. Other traditional tools of statutory interpretation—context, history, precedent, and purpose—align with the most natural reading of its text. Expenditures for the purpose of influencing the

decisions of public officials—whether directly or indirectly—belong in Account 426.4.

## B.   Accounts 923 and 930.1 Are Residual so Inapplicable

Lastly, we conclude that Accounts 923 and 930.1 are, by their express terms, only residual categories.  Because the disputed expenditures here fit into Account 426.4, it would be inappropriate to resort to any residual account.  The text of each account supports that conclusion.

FERC correctly acknowledges that, while Account 923 is potentially "broad in scope," Resp. Br. 55, it does not include expenses "eligible for Account 426.4 in the first place," *id.* 57. And for good reason.  The description of Account 923, entitled "Outside Services Employed," explicitly excludes expenditures that could be categorized in other accounts:

> This account shall include the fees and expenses of professional consultants and others for general services *which are not applicable* to a particular operating function or *to other accounts*.  It shall include also the pay and expenses of persons engaged for a special or temporary administrative or general purpose in circumstances where the person so engaged is not considered as an employee of the utility.

18 C.F.R. pt. 101, Account 923 (emphasis added).

So too with Account 930.1, titled "General Advertising Expenses," which is described to include:

> the cost of labor, materials used, and expenses incurred in advertising and related activities, *the cost*

*of which by their content and purpose are not provided for elsewhere.*

18 C.F.R. pt. 101, Account 930.1 (emphasis added). "Note B" to the Account's description confirms that its reference to expenditures "provided for elsewhere" covers those in Account 426.4. It directs parties to:

Exclude from this account and include in account 426.4, Expenditures for Certain Civic, Political and Related Activities, expenses for advertising activities, which are designed to solicit public support or the support of public officials in matters of a political nature.

*Id.*, Account 930.1 Note B.

For our purposes, what matters is that Account 923 and Account 930.1 each excludes expenditures that fit into any other account. For all the reasons discussed above, we hold that PATH's disputed expenditures belong in Account 426.4. Thus, beyond identifying their residual nature, we need not further consider the scope of Accounts 923 or 930.1 to conclude that they are not the appropriate categories for PATH's disputed expenditures.

\* \* \*

We need only apply Account 426.4's Official Decisions Clause to PATH's expenditures to decide this petition. As recounted above, PATH's own internal statements confirm that their disputed expenditures were made for the purpose of influencing the decisions of public officials. *See* J.A. 66, 115, 117-18, 142-44. That makes sense. PATH was formed to construct a power transmission line, for which state as well as federal approval was required. The Commission itself

concedes that PATH's disputed expenses were "indirectly aimed at influencing public officials' decisions." Resp. Br. 46; *see also id.* 40 (referring to "the indirect efforts of [the public relations contractors] to secure state Certificates"). The disputed expenditures therefore should have been included in Account 426.4 rather than Accounts 923 and 930.1, and so not incorporated into PATH's formula rate during the challenged years.

Accordingly, we grant the petition for review, vacate the portions of FERC's Opinions 554-A and 554-B that authorized PATH to book the disputed expenditures in accounts other than Account 426.4, and remand for further proceedings consistent with this opinion.

*So ordered*.